## CIRCUIT COURT OF THE CITY OF RICHMOND

In re Richmond Newspapers, Inc.

December 15, 1988

By JUDGE RANDALL G. JOHNSON

At issue in this case is the proper interpretation of Virginia Code §§ 16.1-300 and 16.1-305. Specifically, do those sections provide a blanket prohibition against disclosure to the press of court records relating to juveniles and, if not, did the juvenile court consider proper factors in denying disclosure here. A secondary issue presented is whether the juvenile court's decision could properly be made without an *in camera* review of the subject records.

The relevant portions of the subject statutes are as follows:

Section 16.1-300. *Confidentiality of Department Records.* -- A. The social, medical, psychiatric and psychological reports and records of children who are committed to the Department of Corrections shall be confidential and shall be open for inspection only to the following . . . .

6. Any other person, agency or institution, by order of the court, having a legitimate

interest in the case or in the work of the court . . . .

Section 16.1-305. *Confidentiality of court records.* -- A. Social, medical and psychiatric or psychological records, including reports or preliminary inquiries, predisposition studies and supervision records, of neglected and abused children, children in need of services and delinquent children shall be filed with the other papers in the juvenile's case file. All juvenile case files shall be filed separately from adult files and records of the court and shall be open for inspection only to the following . . . .
4. Any other person, agency or institution, by order of the court, having a legitimate interest in the case or in the work of the court . . . .

The records at issue here concern Rakie Cloyd, a seventeen year old who was found shot to death in an alley on July 27, 1988. Before his death, Cloyd had been the subject of proceedings in the Juvenile and Domestic Relations District Court of the City of Richmond, as well as a defendant in this court on a murder charge which was eventually nol prossed. According to police, Cloyd was also a suspect in numerous other murders in Richmond, police believing him to have been a "hit man" for certain drug dealers. Cloyd's case in this court had been transferred from the juvenile court pursuant to Virginia Code Section 16.1-269, which allows juveniles to be tried as adults in certain specified instances. While much of Cloyd's file in this court was open for public inspection, the file contained a sealed envelope with documents forwarded by the juvenile court. On August 12, 1988, Richmond Newspapers, Inc., moved this court to unseal the juvenile court records in this court's file. After a hearing, the Honorable James B. Wilkinson granted the Newspapers' motion, finding that there was no longer any justification for continuing to keep the records concerning Cloyd sealed.
On September 21, 1988, the Newspapers filed a motion in juvenile court seeking access to all records relating

to Rakie Cloyd that were sealed pursuant to Virginia Code Sections 16.1-300 and 16.1-305. At a hearing on the motion, the Newspapers retreated from its initial position that all records concerning Cloyd must be disclosed, and instead requested the juvenile court judge to conduct an *in camera* review of the records and to allow disclosure of all records except those for which there was, in the judge's view, a compelling need for nondisclosure. That request was denied. In its ruling, the juvenile court held that in considering requests such as that made by the Newspapers, a court must weigh the public's right to access against whatever harm such access might cause to the juvenile, his family, and the court's ability to gather information. Specifically, the court stated:

> This Court agrees that a serious crime problem exists among young people today in our city. This is well known to the public and those in authority based on information supplied by the media. The Court also agrees with the [Newspapers] and the cases cited that public knowledge of these problems and the work of the juvenile justice system concerning the effectiveness and efficiency of the system should be made a matter of public information except in those cases in which the damage done by the disclosure of this information would outweigh the right to access as in this case. In following these general discretionary rules and opinions, this Court has granted media access in many serious criminal cases which have come before the court. The Court is also of the opinion that in this particular case in which a young father has been killed, survived by a child of his own, a young mother and other family members, that his right of privacy should protect access to these records after his death.
> In addition, public access to the probation (social history) records in this case would likely make it impossible in the future for the court's investigative probation counselors to collect information upon which court decisions have to be based.

The damage to the child and family of Rakie Cloyd and the damage to the court's sources of information, in this particular case, clearly outweigh any interest of the public to the information requested, and the Court will exercise its discretion as allowed by the statutes and cases and order that the Petitioner's motion is denied.

The Newspapers immediately noted an appeal to this court from the above ruling. In addition, the Newspapers have also filed a petition for writ of mandamus asking this court to compel the juvenile court judge to conduct the *in camera* review previously sought. At a hearing held on November 30, 1988, the Newspapers, the family of Rakie Cloyd, the Department of Corrections, and the juvenile court judge all appeared by counsel, as did counsel who represented Rakie Cloyd on the previously-mentioned murder charge.[1] With the exception of the Newspapers and counsel who represented Cloyd, each of the parties asks that the juvenile court's ruling not be disturbed. Counsel for Cloyd's family and the Department of Corrections argue that the juvenile court's ruling is correct because Sections 16.1-300 and 16.1-305 provide a blanket prohibition against the disclosure sought here. Counsel for the juvenile court judge argues that even if no blanket prohibition exists, the factors considered by the juvenile court in denying disclosure were proper and, further, that this court must assume that in making his ruling, the juvenile court judge was fully aware of what an *in camera* review would have revealed. Thus, he argues, it would be pointless to require such a review now. Counsel for Cloyd agrees with the Newspapers that no blanket prohibition exists, and that an *in camera* review is appropriate. He takes no position, however, on whether the factors considered by the juvenile court were proper. Before discussing these various positions, the court must first determine whether this case is properly before it on the Newspapers' appeal or on the Newspapers' petition for writ of mandamus. In this

---

[1] Counsel for the juvenile court judge appeared in response to the petition for writ of mandamus.

regard, it must be noted that mandamus will lie only where no other specific and adequate remedy exists. Specifically, it cannot usurp the functions of a writ of error, appeal, or certiorari. *See generally*, 12B M.J., *Mandamus*, § 9. Thus, if this court has appellate jurisdiction over the order of the juvenile court, the petition for writ of mandamus must be dismissed.

Appeals from rulings of juvenile courts are governed by Virginia Code § 16.1-296. That section provides that an appeal may be taken "[f]rom any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction." Here, the Newspapers seek sealed records of a juvenile who was within the jurisdiction of the juvenile court. Since one of the purposes of sealing such records is to enhance the benevolent and rehabilitative purposes of the juvenile court system,[2] any ruling on a request for disclosure unquestionably affects the rights and interests of the juvenile in question. Accordingly, the juvenile court's order denying disclosure of those records to the Newspapers is appealable. The petition for writ of mandamus will be dismissed.

Turning now to the proper interpretation of §§ 16.1-300 and 16.1-305, this court agrees with the juvenile court that in considering a request such as the one made by the Newspapers here, the juvenile court must attempt to strike a balance between the public's right to access and the potential harm which such access might cause. In an unbroken line of cases starting in 1980, the Supreme Courts of the United States and of Virginia have recognized that "[o]ne of the demands of a democratic society is that the public should know what goes on in the courts by being told by the press what happens there . . . ." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 n. 9 (1980). *See also Globe Newspaper Co. v Superior Court*, 457 U.S. 596 (1982); *Press Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984); *Press Enterprise Co. v. Superior Court*, 478 U.S. 1, 92 L. Ed. 2d 1 (1986); *Richmond Newspapers, Inc. v. Commonwealth*, 222 Va. 574, 281 S.E.2d 915 (1981). These cases all hold that absent a compelling

---

[2] See Hopper and Slayton, "The Revision of Virginia's Juvenile Court Law," 13 U. Rich. L. Rev. 847, 880-81 (1979).

need for secrecy, the First Amendment to the United States Constitution and, in the opinion of the Virginia Court, Article I, Section 12, of the Virginia Constitution, require that trials and pretrial proceedings be open to the public and the press. As was said, in *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975):

> [I]n a society in which each individual has but limited time and resources with which to observe at first hand the operations of his government, he relies necessarily upon the press to bring to him in convenient form the facts of those operations . . . . With respect to judicial proceedings in particular, the function of the press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice . . . .
>
> The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecution . . . are without question events of legitimate concern to the public and consequently fall within the responsibility of the press to report the operations of government. 420 U.S. at 491-92 (citation omitted).

The factors that mandate free access to court hearings apply with equal force to public review of court records. *See, e.g., Associated Press v. United States District Court*, 705 F.2d 1143, 1145 (9th Cir. 1983) ("There is no reason to distinguish between pretrial proceedings and the documents filed in regard to them."); *Vermont v. Mitchell*, 10 Med. L. Rep. (BNA) 2442, 2446 (Vt. Dist. Ct. 1984) ("Assuming that there is a first Amendment right of access to judicial proceedings in general, it follows logically that documents relating to those proceedings should likewise be accessible."). The United States Supreme Court has explained that "official records and documents . . . are the basic data of governmental operations." *Cox Broadcasting Corp., supra*, 420 U.S. at 491-92. In the context of judicial proceedings, "court records often provide important, sometimes the only, basis or explanations

for a court's decision." *Brown and Williamson Tobacco Corp. v. Federal Trade Commission*, 710 F.2d 1165, 1787 (6th Cir. 1983), *cert. denied*, 465 U.S. 1100 (1984); *see In re Knight Publishing Co.*, 743 F.2d 231, 235 (4th Cir. 1984). Thus, recognizing the important functions served by wide public access to judicial records, the courts that have examined the issue have almost uniformly concluded that such access is protected by the First Amendment, or the comparable state constitutional provision.[3]

On the other hand, it is also clear that society has a legitimate interest in shielding juveniles from the same level of scrutiny which sometimes attaches to adults. With reference to juvenile offenders, that shield is legitimately designed to facilitate rehabilitation and, assuming such rehabilitation has occurred, to allow such offenders to take their places on society as law-abiding adult citizens unfettered by the stigma of childhood indiscretions. In this regard, the statutes relating to juveniles provide for hearings which are closed to the public, expungement or sealing of a juvenile offender's files, papers, and records after such offender's eighteenth birthday, and the general confidentiality of juvenile court records. It is the opinion of this court that this interest of society, to protect juveniles from the types of consequences which would result from their acts if such acts were committed by adults, is just as compelling as society's interest in gaining access to court records. Only by balancing these seemingly competing interests, then, can §§ 16.1-300 and 16.1-305 be properly applied.

It follows from the above discussion that a blanket prohibition against disclosure of juvenile court records is inappropriate. This is true because unless such disclosure will adversely affect society's goal of rehabilitating the juvenile and shielding him from the consequences of

---

[3] The Virginia Supreme Court has recently held that absent unusual circumstances, most civil court records must be open to the public under Section 17-43 of the Virginia Code. Shenandoah Publishing House, Inc. v. Fanning, 235 Va. 253 (1988). Although the Court did not reach the constitutional issue, the opinion may be fairly read as strongly suggesting that the court would ultimately adopt the view that the First Amendment requires broad access to court records. See also Charlottesville Newspapers, Inc. v. Berry, 215 Va. 116, 206 S.E.2d 267 (1974).

his juvenile acts, there is nothing left to place on the scale opposite society's right to access. Moreover, even where some adverse impact on rehabilitation and "shielding" can be shown, such impact must still be weighed against the general right to access in order to determine whether access will be allowed. Indeed, the juvenile court itself rejected the notion of a blanket prohibition when it noted that it had "granted media access in many serious criminal cases which have come before the court." The juvenile court erred, however, in the manner in which it attempted to strike a balance here.

First, the juvenile court improperly considered "[t]he damage to the child and family of Rakie Cloyd" in denying access. While Virginia Code § 16.1-227 states that with regard to the juvenile court system, "the welfare of the child and the family is the paramount concern of the Commonwealth," there is nothing in that section or elsewhere which allows a juvenile's family to decide whether access to court records will be allowed. This is not to say that a certain stigma or embarrassment may not flow to a juvenile's family if disclosure of a juvenile's record is made. Such stigma or embarrassment, however, is no different than that which flows to the family of *any* offender, juvenile or adult. While legitimate and salutary reasons exist for protecting juveniles from the stigma and embarrassment of disclosure of their files -- that is, the rehabilitation and "shielding" previously discussed -- this court can think of no valid reason why the family of a juvenile offender is entitled to any greater protection from such stigma and embarrassment than the family of any other offender. In the absence of such a reason, the damage caused to the family should not be considered.

Similarly, the juvenile court also improperly considered Cloyd's right of privacy in denying access to his records. No such right of privacy exists. Unfortunate as it is, Cloyd is now dead. Any right of privacy which he may have had died with him. *See e.g., Diamond v. Federal Bureau of Investigation*, 707 F.2d 75, 77 (2d Cir. 1983), *cert. denied*, 465 U.S. 1004 (1984). Moreover, as morbid as it may sound, the goals of rehabilitating and "shielding" Cloyd, who is now deceased, can no longer be met. Thus, whatever interests society in general and Cloyd in particular may have had in resisting disclosure so as to facilitate

his rehabilitation and to shield him from the consequences of his juvenile acts no longer exist, and they may not be properly relied upon now to deny access.

Finally, the juvenile court denied access to Cloyd's juvenile records in order to protect that court's ability to obtain confidential information; that is, information which is gathered on the promise that such information will not be disclosed. This court agrees that such information should not be disclosed. The problem, however, is that in refusing to disclose any part of the court's record on Cloyd, *all* information -- not just information gathered upon a promise of nondisclosure -- has been withheld. Unless there is nothing in the court's record on Cloyd other than information gathered upon a promise of nondisclosure, the blanket refusal to allow access was improper. Because the order of the juvenile court does not reveal whether any part of Cloyd's record does not fall within this "promised nondisclosure" category, that order must be vacated, and the case must be remanded for further consideration. Unless the juvenile court is intimately familiar with the records sought in this case, as opposed to juvenile court records generally, an *in camera* review of such records would appear necessary.[4]

---

[4] In making this ruling, the court does not rule out other possible reasons for nondisclosure. For example, there are portions of adult offenders' records (e.g., presentence reports) which by statute may not be disclosed to the public. The same rule should probably apply to juveniles' records.