**Charles RECTOR et al., Appellants,**

v.

**CITY OF BOWLING GREEN, Kentucky, A Municipal Corporation of the Second Class, Appellee.**

Court of Appeals of Kentucky.

Oct. 19, 1979.

Discretionary Review Denied March 25, 1980.

Philip I. Huddleston, Huddleston Brothers, Gleitz & Duncan, Bowling Green, for appellants.

Whayne C. Priest, Jr., English, Lucas, Priest & Owsley, Bowling Green, for appellee.

Before WHITE, GUDGEL and HAYES, JJ.

WHITE, Judge.

This appeal is from a judgment entered December 28, 1978, in which the Warren Circuit Court approved an annexation ordinance issued by the City of Bowling Green.

On February 7, 1978, the Board of Commissioners of Bowling Green enacted an ordinance proposing to annex approximately 2,505 acres north of the City's present boundary. Located within the 2,505 acres are about 650 persons, of whom no more than 213 are registered voters; several small industries; and two substantial industrial plants, Airtemp Division of Fedders Corporation and the Bada Company. During the calendar year next preceding the proposed annexation (1977), the average number of employees was 481 at Airtemp and 79 at Bada.

Following the enactment of the annexation ordinance, a suit challenging it was filed in the Warren Circuit Court. The judgment of that court approved annexation, holding that such constituted "normal expansion" of the City, that appellants had no standing under KRS 81.280, and that, having stipulated that they could prove no manifest injury, appellants also could not seek relief under KRS 81.140.

We affirm the holding of the lower court.

The issue presented is whether appellants have standing under KRS 81.280 and, if so, whether manifest injury to landowners within the area proposed for annexation must be pleaded and proved by them.

KRS 81.140 covers municipal annexation procedures for second-class cities together with remonstration guidelines should objections be launched. Under this statute the protest method to be followed is determined by the percentage of freeholders joined in suit. Thus, an industry, economically powerful as it may be, would nevertheless stand with the voice of only one freeholder among the hundreds or thousands of individual freeholders in that district. Furthermore, should the industry be operating on leased rather than purchased premises, even that voice would be lost, for it is recognized that a tenancy at will, from year to year, or at sufferance is a mere chattel interest, not a freehold one. 28 Am.Jur.2d *Estates* § 56 (1966).

Realizing the unfavorable balance against industry, the legislature enacted KRS 81.280. It states:

(1) The general assembly, recognizing that the general welfare and prosperity of the commonwealth of Kentucky is very greatly dependent upon continued industrial development and expansion; and, further recognizing that reasonable assurances of fair treatment will greatly increase industrial development and expansion in Kentucky, it hereby is declared to be the *public policy* of the commonwealth of Kentucky *to encourage* the location of new *industries* and the expansion of existing industries in Kentucky *by prohibiting unfair and unreasonable annexation* by municipal corporations of industries now or hereafter located in unincorporated areas. However, it is *not the intent* of the general assembly *to prohibit*, restrict or hamper *normal expansion* of municipal boundaries if such normal development and expansion extends to and embraces such industrial properties.

(2) No unincorporated territory in which is located an industrial plant or plants shall be annexed by any municipality unless such territory is embraced within a broad, comprehensive plan of annexation. The territory to be annexed shall be contiguous to the boundary line or lines of such municipality, and the territory or area to be annexed shall be both compact and contiguous. The number of registered voters duly qualified to vote in the territory proposed to be annexed shall equal or exceed fifty per cent (50%) of the average number of persons employed by industrial plants within such territory during the next preceding calendar year, the number of such registered voters to be determined by taking the total of such voters from the last closed registration books in the county clerk's office.

(3) *Nothing* herein shall be construed as *prohibiting* any municipality from annexing any industrial plant or plants or its properties *if* the duly authorized representatives of such industrial plant or plants *consent* to or request such action.

(4) *Any* person or persons within the area proposed to be annexed shall have the *right to* file a *protest* and to have the protest heard and determined *as now provided by existing* statutes.

■ The statute was introduced at the 1956 Extraordinary Session of the General Assembly, at which time Governor A. B. Chandler addressed the delegates concerning pending legislation. It is clear from his remarks that KRS 81.280 is to attract industry to the Commonwealth through legis-

lative assurances that industrial plants will not arbitrarily be included in municipal annexation plans, e. g. solely for taxation purposes.

As with all legislation, the *general* policy of 81.280 is to benefit the "general welfare and prosperity" of all people of Kentucky; however, the expressed *specific* policy of the statute, as stated in subsection (1), is to protect industries from "unfair and unreasonable annexation" as measured against "normal expansion of municipal boundaries." Nothing within either the words or the history of the statute indicates a special intent to protect or benefit any individual or group other than industry, and that protection is limited to recourse against unfair annexation, not that done during normal expansion.

■ An annexation may or may not be a part of a city's "normal expansion." KRS 81.280 recognizes the temptation for a city arbitrarily to annex an area, e. g. to expand its tax base. Accordingly, to protect against such annexations, subsection (2) provides criteria for which arbitrariness may be established. Nevertheless, even should it be evidenced that an annexation ordinance is beyond "normal expansion," an industry may choose to waive the protection of subsection (2) and consent to the proceedings through subsection (3). If, however, the plan is shown to be within the "normal expansion of municipal boundaries," that statute, as indicated in subsection (1), is not meant to preclude such expansion.

■ Thus, KRS 81.280 has application as follows:

1) If the plan is arbitrary and not within normal expansion, the option is given industry either to forestall annexation through application of subsection (2) or consent through subsection (3).

2) If the annexation is within normal expansion, subsection (4) clearly intends the method of remedy for industry to be the same as that of any other person within the affected territory: remonstration through existing statutes, e. g. KRS 81.140(3).

■ Although KRS 81.280 grants a specific statutory preference to industry, it does not mean to convey to others the same preferential right in addition to or as an alternative for those already provided freeholders under existing sections of Chapter 81. Subsection (4) is not to be interpreted as a specific grant of standing but merely as an acknowledgment that the rights and remedies provided by existing statutes to all "persons within an area proposed to be annexed" are not to be precluded by 81.280. Furthermore, it is not to be interpreted to mean that the establishment of standing under another statute is intended to be a backdoor approach to standing under 81.-280. The right of standing under 81.280 is limited to industry and is not to be extended.

In other words, the specific statutory preference to industry means that only industry can place in issue the question of whether the action herein of the City of Bowling Green is within "normal expansion" as determined by factors such as the ratio of registered voters to industrial employees.

■ All persons other than industry are precluded from raising this issue. Since under the facts of this case appellants have stipulated that no industrial plant has been joined as a party-plaintiff, they are so precluded from the issue of "normal expansion." They must rely upon the provisions of KRS 81.140, which considers instead "the interest of the city" and "manifest injury to the persons owning real estate in the territory."

■ We hold that KRS 81.280 grants standing to no person or persons other than industry and that having stipulated the lack of such status, appellants are precluded from relying on the provisions of such statute. Further, the establishment of mani-

fest injury relates to freeholders' protests under KRS 81.140 and related sections and is of no consequence in this case, since appellants stipulated that they are unable to prove that factor.

For the foregoing reasons, the judgment of the Warren Circuit Court is affirmed.

All concur.