707 F.2d 75
 Sigmund DIAMOND, Plaintiff-Appellant,
v.
FEDERAL BUREAU OF INVESTIGATION, William Webster, Director,
Federal Bureau of Investigation, United States Department of
Justice, Griffin Bell, Attorney General of the United
States, and Cyrus Vance, Secretary of State, Defendants- Appellees.
 No. 1256, Docket 82-6349.
 United States Court of Appeals,
Second Circuit.
 Argued May 4, 1983.
Decided May 16, 1983.
 
 Haliburton Fales, 2d, New York City (Dorothea W. Regal, New York City, of counsel), for plaintiff-appellant.
 Franklin H. Stone, Asst. U.S. Atty., S.D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Jane E. Bloom, Thomas D. Warren, Asst. U.S. Attys., New York City, of counsel), for defendants-appellees.
 Before KAUFMAN and VAN GRAAFEILAND, Circuit Judges, and MISHLER, District Judge.*
 IRVING R. KAUFMAN, Circuit Judge:
 
 
 1
 This is an appeal from Judge Carter's refusal to compel disclosure of certain materials pursuant to the Freedom of Information Act ("FOIA"). We are spared an extensive recitation of the facts and procedural history, since both are admirably set forth in the district court opinion, Diamond v. FBI, 532 F.Supp. 216 (S.D.N.Y.1981). We shall refer only to those details necessary to our discussion.
 
 
 2
 The judgment is affirmed, substantially for the reasons stated in Judge Carter's careful and comprehensive opinion, id., and the memorandum endorsement filed January 26, 1982, Diamond v. FBI, No. 79 C 3770 (S.D.N.Y. Jan. 26, 1982), reprinted in Joint App. at A 430 to A 432. Briefly, we shall consider several arguments raised for the first time on appeal, and therefore not directly considered by the district judge.
 
 
 3
 Appellant argues that two of the FOIA exemptions involved in this case, 5 U.S.C. Sec. 552(b)(7)(C), (b)(7)(D),[1] may not be used to justify deletions from documents more than fifteen years old. In support, he points to a single, isolated remark in a report issued by House-Senate conferees considering the 1974 Amendments to FOIA. The conferees "express[ed] approval of the present Justice Department policy waiving legal exemptions for withholding historic investigatory records over 15 years old, and they encourage[d] its continuation." H.R.Rep. No. 1380, 93d Cong., 2d Sess. (1974), reprinted in Subcomm. on Government Information and Individual Rights of the House Comm. on Government Operations & Subcomm. on Administrative Practice and Procedure of the Senate Comm. on the Judiciary, Freedom of Information Act and Amendments of 1974 (P.L. 93-502): Source Book: Legislative History, Texts, and Other Documents 230 (Joint Comm.Print 1975).
 
 
 4
 Even were we to consider this one statement dispositive of the issue, we read it as implicitly recognizing the discretion vested in the Justice Department to depart from its policy in particular cases or to discard the policy entirely. An expression of approbation hardly amounts to a legislative directive. Moreover, the language of the statute contains no limitation of the sort Diamond would have us adopt. It would have been a simple matter for Congress to have included a provision in FOIA requiring release of all documents of a certain vintage. This case demonstrates the wisdom of the decision not to have done so. As Diamond's own scholarly articles reveal, the McCarthy era was and remains a highly controversial episode in our nation's history. For persons who were subjects of FBI investigations or who cooperated with the agency, the potential for embarrassment, harassment, or other repercussions remains acute. The dangers of disclosure may apply to old documents, and we therefore decline to adopt a per se rule requiring release in the face of those hazards. See Lamont v. Department of Justice, 475 F.Supp. 761 (S.D.N.Y.1979) (McCarthy era documents); cf. Ferry v. CIA, 458 F.Supp. 664 (S.D.N.Y.1978) (documents more than sixteen years old may be withheld pursuant to personnel and medical files exemption, 5 U.S.C. Sec. 552(b)(6), even where government bears heavier burden of demonstrating "clearly unwarranted invasion of personal privacy") (emphasis supplied).
 
 
 5
 Diamond also challenges Judge Carter's analysis of the Government's use of exemptions 7(C) and 7(D). As to the former, he contends the district court impermissibly employed a per se "consent" test in determining whether the 7(C) "invasion of personal privacy" exemption would be upheld. Appellant might have a claim, had Judge Carter required disclosure only where the person named had manifested consent to release of his identity, but otherwise failed to engage in the balancing test mandated, e.g., Fund for Constitutional Gov't v. National Archives and Records Serv., 656 F.2d 856, 862 (D.C.Cir.1981); Ferri v. Bell, 645 F.2d 1213, 1217 (3d Cir.1981), modified on other grounds, 671 F.2d 769 (3d Cir.1982); Maroscia v. Levi, 569, 589 F.2d 1000, 1002 (7th Cir.1977); Lamont v. Department of Justice, supra, 475 F.Supp. at 777; Forrester v. United States Dep't of Labor, 433 F.Supp. 987, 989 (S.D.N.Y.1977), aff'd mem., 591 F.2d 1330 (2d Cir.1978). In fact, the district court properly struck the required balance, pitting "the privacy interest and the extent of the invasion thereof against the public interest in disclosure ... 'tilt[ing] the balance in favor of disclosure.' " Lamont v. Department of Justice, supra, 475 F.Supp. at 777 (citation omitted).
 
 
 6
 The court considered Diamond's scholarly interest in the documents and the public interest in "the effect and extent of FBI intrusions into the institutions of our society." 532 F.Supp. at 224-25. Judge Carter evaluated the consequence of the passage of time on the privacy interests of those named in the documents. In this connection, the court noted that "since the material [sought] is thirty or more years old, the privacy interests of the third parties are not all of a piece." Id. at 226. Judge Carter therefore withheld summary judgment pending an examination of the results of an extensive search by the Government through its files for evidence that the named parties had waived their privacy interests through death or public disclosure of involvement with the FBI, or preferred to allow release.[2] Presumably, it is this procedure which Diamond characterizes as a "per se test."
 
 
 7
 We believe, however, that appellant misconstrues the court's approach. Judge Carter simply concluded that death or voluntary disclosure so diminished any privacy interest as to amount to a waiver, Ingle v. Department of Justice, 698 F.2d 259, 269 (6th Cir.1983), and the identities of persons in those two categories could not be withheld. With regard to the ninety-one individuals the FBI determined were in neither group, the court noted they "are or have been the subject of F.B.I. investigations involving communist affiliations, matters of internal security or loyalty, security of government employees, espionage, etc." Memorandum Endorsement, supra, Joint App. at A 431. Accordingly, "in light of the sensitive nature of the matters involved and the potential damage disclosure might cause[,] ... the government is warranted in refusing to reveal the[ir] identities ...." Id.
 
 
 8
 We agree with this eminently reasonable conclusion, and commend the district judge for his wise approach to the issue, which went beyond the facile assumption that mere mention in FBI reports will, in every case, support invocation of the 7(C) exemption.
 
 
 9
 Diamond's challenge to the 7(D) exemption is similarly without merit. In Londrigan v. FBI, 670 F.2d 1164 (D.C.Cir.1981), upon which he mistakenly relies, the court was concerned with exemption (k)(5) of the Privacy Act, 5 U.S.C. Sec. 552a(k)(5) (information furnished in confidence, pursuant to investigation of suitability for federal employment). It concluded the government would be required to present an affidavit, based upon personal knowledge, demonstrating an express or implied promise of confidentiality was given to each source. The panel specifically recognized, however, that its analysis was unique to the purposes and scope of the Privacy Act, and would not apply to criminal law enforcement documents:
 
 
 10
 In response to concern that agencies such as the FBI would be hampered in their law enforcement efforts by the Privacy Act's disclosure mandate, Congress specifically exempted [from section (k)(5) ] information held by these entities for law enforcement purposes. After weighing the competing interests in information gathered on prospective federal employees, however, Congress struck an entirely different balance. In this area, Congress plainly determined that the Government's stake in nondisclosure was far less important than it is in the context of law enforcement operations,[34] and it is evident that the citizen's interest in access to personal data affecting his ability to earn a living is of a very high magnitude.
 
 
 11
 34. Exemption (k)(5) of the Privacy Act must be carefully distinguished from Exemption 7 of FOIA....
 
 
 12
 670 F.2d at 1170 (footnote 33 omitted) (emphasis in original).
 
 
 13
 In light of the practical difficulty--if not impossibility--of justifying each use of the confidential source exemption by way of an affidavit on personal knowledge, the district court properly applied the "functional approach," Lamont v. Department of Justice, supra, 475 F.Supp. at 779 & n. 74 (collecting cases), denying disclosure of the names of interviewees and others where "it is apparent that the agency's 'investigatory function depends for its existence upon information supplied by individuals who in many cases would suffer severe detriment if their identities were known,' " id. at 779 (citation omitted).
 
 
 14
 Finally, we reject appellant's challenge to the section 1 exemptions, 5 U.S.C. Sec. 552(b)(1).[3] The Government demonstrated it followed proper classification procedures pursuant to Executive Order ("E.O.") 12065.[4] Ingle v. Department of Justice, supra, 698 F.2d at 268. The affidavit of Special Agent Busching included numerous detailed justifications for the deletions claimed pursuant to E.O. 12065 Sec. 1-301(b) and (d), thereby establishing that each item not disclosed "logically fell into the category asserted" (either (b) or (d)). See Lamont v. Department of Justice, supra, 475 F.Supp. at 768 (collecting cases following rule first enunciated in Weissman v. CIA, 565 F.2d 692, 697 (D.C.Cir.1977)). Concerning the section 1-301(c) deletions, not presumed to cause damage to national security,[5] Judge Carter conducted an in camera examination. See Brown v. FBI, 658 F.2d 71, 74 (2d Cir.1981). Having examined each document, the judge was persuaded by the assertion in the Busching affidavit, that
 
 
 15
 [d]ue to the uniqueness of the information, a more detailed description of the withheld classified portions of [the] document[s] would identify the source and could reasonably be expected to result in identifiable damage [to national security].
 
 
 16
 We, no less than the district court, must pay substantial deference to the affidavit submitted by the agency in the "national security" context. Weissman v. CIA, supra, 565 F.2d at 697 n. 10 (citing S.Rep. No. 1200, 93d Cong., 2d Sess. 12 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 6267, 6290). Apparently, Diamond can offer no better rebuttal than merely asserting his cynicism that the withheld materials may damage our nation's security.[6] This, we believe, is insufficient to counter the expertise of the agency and the considered opinion of the district judge, who examined each document and the affidavit, in camera.
 
 
 17
 Affirmed.
 
 
 
 *
 Of the United States District Court for the Eastern District of New York, sitting by designation
 
 
 [1]
 These provide:
 (b) This section does not apply to matters that are--
 * * *
 (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would
 * * *
 (C) constitute an unwarranted invasion of privacy [or]
 (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by a confidential source.
 
 
 [2]
 Pursuant to Judge Carter's order, the FBI was put to the task of reviewing nearly 200,000 pages of documents
 
 
 [3]
 Section 1 exempts from disclosure "matters that are ... specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and ... are in fact properly classified pursuant to such Executive order."
 
 
 [4]
 E.O. 12065, 43 Fed.Reg. 28949 (July 3, 1978), 3 C.F.R. 190 (1979), provides in relevant part:
 1-301. Information may not be considered for classification unless it concerns: (a) military plans, weapons or operations; (b) foreign government information; (c) intelligence activities, sources or methods; (d) foreign relations or foreign activities of the United States ....
 1-302. Even though information is determined to concern one or more of the criteria in Section 1-301, it may not be classified unless an original classification authority also determines that its unauthorized disclosure reasonably could be expected to cause at least identifiable damage to the national security.
 
 
 [5]
 Section 1-301(b) and (d) classified matters are "presumed to cause at least identifiable damage to the national security." E.O. 12065 Sec. 1-303
 
 
 [6]
 This is so, Diamond avers, because previously classified materials, declassified upon review during this litigation, do not in his opinion exhibit any significant connection to national defense or foreign policy. We decline to accord much weight to this view and we reject the contention. Military Audit Project v. Casey, 656 F.2d 724, 754 (D.C.Cir.1981); Halperin v. National Sec. Council, 452 F.Supp. 47, 51 (D.D.C.1978), aff'd, 612 F.2d 586 (D.C.Cir.1980)