Leonard **LAWSON,** Appellant

v.

**OFFICE OF the ATTORNEY GENERAL and Jack Conway, in his Official Capacity as Attorney General of Kentucky; The Courier–Journal, Inc.; Lexington Herald–Leader Co.; and the Associated Press, Appellees.**

No. 2012–SC–000201–DG.

Supreme Court of Kentucky.

Dec. 19, 2013.

J. Guthrie True, Frankfort, Whitney True Lawson, Counsel for Appellant.

Nicole Hou Wen Pang, Frankfort, Counsel for Appellees Office of the Attorney General, and Jack Conway, in His Official Capacity as Attorney General of Kentucky.

Jon L. Fleischaker, Jeremy Stuart Rogers, Louisville, Counsel for Appellees The Courier–Journal, Inc.; Lexington Herald–Leader Co.; and The Associated Press.

Jeffrey C. Mando, Covington, Counsel for Amicus Curiae The Reporters Committee for Freedom of the Press, and E.W. Scripps Company.

Opinion of the Court by Justice ABRAMSON.

In *Beckham v. Board of Education of Jefferson Co.*, 873 S.W.2d 575 (Ky.1994), we held that the Kentucky Open Records Act (KRS 61.870 to 61.884, the "ORA" or the "Act") provides a cause of action whereby an affected individual may seek to preclude the disclosure of public records pertaining to him or her. Having had little occasion since *Beckham* to address such reverse-ORA actions, we granted Appellant Leonard Lawson's motion for discretionary review to consider his claim that the Court of Appeals and the Franklin Circuit Court have misapplied *Beckham* and the ORA by refusing to enjoin the Attorney General from disclosing a statement—what the parties have referred to as a "proffer" of information or of evidence—Lawson gave to the Attorney General in 1983. The proffer pertains to Lawson's involvement in a scheme to "rig" bids for highway construction contracts with the Kentucky Department of Transporta-

tion. Agreeing with the courts below that Lawson's 1983 statement may be disclosed, we affirm the Court of Appeals' decision.

### RELEVANT FACTS

The pertinent facts are not in dispute. Sometime prior to the late spring of 1983, federal authorities accused Lawson, as owner and chief executive officer of Mountain Enterprises, Inc., an asphalt company involved many times in highway construction projects, in Eastern Kentucky, of participating in unlawful bidding on state highway construction contracts.[1] In June of that year Lawson pled guilty in federal court on behalf of the company to one count of violating the Sherman Antitrust Act, 15 U.S.C. § 8405. The company was ordered to pay a fine of $150,000.00, and Lawson agreed to cooperate with the ongoing federal investigation.

As a result of the federal conviction, the company's privilege of bidding on new contracts with the Commonwealth of Kentucky was suspended. To have that privilege reinstated, in July 1983, the company, again through Lawson as its owner and chief executive officer, agreed with the Attorney General to pay $112,000.00 as restitution to the Kentucky Department of Transportation, and to cooperate with the Attorney General's investigation. Although formal litigation did not prompt this agreement, there was certainly the prospect of litigation, and the parties have joined in referring to the agreement as a "settlement." Pursuant to that settlement, in August 1983 Lawson was, in effect, deposed by the Attorney General or his agents, and it is that "proffer" of information that is the source of contention here.

Lawson having made his proffer, the matter came to rest, apparently, and stayed at rest for some twenty-five years, until September 2008, when a federal grand jury indicted him, among others, on charges of conspiring to obtain confidential cost estimates for Kentucky highway construction contracts. A jury ultimately (in January 2010) acquitted Lawson of those charges, but not before the federal prosecutor had, prior to trial, moved to be allowed to introduce the 1983 proffer as evidence. The trial court denied that motion, but the motion alerted reporters covering the trial to the proffer's existence. In June 2009 a reporter for the *Courier–Journal*, a newspaper with offices in Louisville and statewide circulation, submitted an Open Records Act request to the Attorney General to have the proffer disclosed.[2] Soon thereafter reporters for the Lexington *Herald–Leader*, another Kentucky newspaper with state-wide distribution, and the Associated Press, the national reporting service, made similar ORA requests. When the Attorney General informed Lawson that he intended to release the proffer, Lawson, seeking to have the release enjoined, brought the present action in the Franklin Circuit Court against the Attorney General and the ORA requestors.

Since then the litigation has had a somewhat lengthy history, including a prior visit to this Court: *Courier–Journal v. Lawson*, 307 S.W.3d 617 (Ky.2010). For present purposes, however, the pertinent procedural history begins with the trial court's January 3, 2011 Order denying Lawson's request for a permanent injunction and ruling that the proffer was to be released to the ORA requestors. By that point, Lawson offered two arguments

---

1. According to the pleadings, Lawson no longer has any interest in or involvement with Mountain Enterprises, Inc.

2. The request seeks both the audio recording of Lawson's statement and transcripts made from that recording.

against disclosure: (1) disclosure of the then twenty-six year old proffer would constitute a clearly unwarranted invasion of personal privacy, in violation of KRS 61.878(1)(a); and (2) disclosure would violate the KRS 61.878(1)(h) blanket ORA exemption for prosecutorial files.[3] Rejecting these arguments, the trial court opined that by entering the settlement agreement Lawson had "bartered away" his privacy interests so as to take the privacy exemption out of play, and opined further that, Lawson having thus waived his privacy rights, release of the proffer could not be deemed an "injury" for the purpose of establishing Lawson's standing to invoke KRS 61.878(1)(h). Concluding thus that neither statutory provision offered Lawson the protection he sought, the trial court ruled that the general disclosure provisions of the ORA applied and that the proffer must therefore be disclosed. Denying, three weeks later, Lawson's CR 59.05 motion to alter, amend, or vacate its Judgment, the trial court reiterated its prior reasoning and in addition noted expressly that in its view the age of the proffer had no effect on the merits of the case.

Lawson then appealed the trial court's Judgment to the Court of Appeals, which, in a divided Opinion, affirmed. The panel's majority declined to address Lawson's contention that he had not waived his privacy rights, because in the majority's view,

even if the trial court's waiver theory was not valid, Lawson's privacy interests were *de minimus* and did not preclude disclosure. The majority reviewed the proffer *in camera* and concluded that it did not contain the sort of sensitive personal information which, in the majority's view, the privacy exemption was meant to protect, and thus, notwithstanding the proffer's age, the public interest in disclosure outweighed Lawson's miniscule interest in privacy. The dissenting judge was concerned that the majority had overstepped its authority. In his view, the trial court's waiver theory was clearly wrong, requiring that the privacy question be remanded to the trial court for reassessment under the appropriate "unwarranted invasion of personal privacy" standard.[4]

With respect to Lawson's invocation of the law enforcement exemption, KRS 61.878(1)(h), the panel again rejected the trial court's reasoning, but affirmed the result. The same majority as above opined that even if Lawson had standing to invoke the (1)(h) exemption, that exemption applies only to disclosures likely to harm the agency, and since Lawson failed to allege any such harm to the *agency,* as opposed to the alleged harm to himself, his (1)(h) claim was properly rejected. Also concurring in the result, the third panel member was of the view that the (1)(h) exemption did not apply to records of the

---

**3.** In his brief to this Court, Lawson adds a third argument to the effect that disclosure would run afoul of KRS 17.150(2). That statute provides in general that with respect to closed cases "[i]ntelligence and investigative reports maintained by criminal justice agencies are subject to public inspection." Excepted from that general rule is "[i]nformation of a personal nature, the disclosure of which will not tend to advance a wholesome public interest or a legitimate private interest." Lawson contends that his proffer comes within this exception and so should not be disclosed. Because Lawson did not preserve

this contention in either the trial court or the Court of Appeals, we decline to address it.

**4.** In the trial court the parties fully briefed and argued the question of whether the balance of interests favored disclosure or nondisclosure, and the court made clear in its Judgment that had it ruled on the basis of balancing rather than waiver the result would have been the same. The Court of Appeals' majority did not short-circuit the process, therefore, by addressing the balancing issue.

Attorney General because the Attorney General's Office could not be characterized as a "law enforcement agency."

Lawson takes issue with all of the opinions generated in the trial court and the Court of Appeals as either incorrect or as not responsive to his claims. He insists that he did not, either by agreeing to speak to the Attorney General or by agreeing to testify in court, if need be, with regard to the alleged unlawful bidding activity of the early 1980s, waive his interest as a private citizen in the confidentiality of his proffer. He further insists that he has a substantial privacy interest in government records, particularly law-enforcement records, identifiably about him, and that his interest far outweighs any *de minimus* public interest more than two-and-a-half decades later.

▮ As to exemption (1)(h), Lawson notes that that provision applies to prosecutorial files even without a showing of harm to the prosecutor. It is that blanket prosecutorial exemption he claims a right to invoke, not the harm-based exemption for law-enforcement records generally. The blanket prosecutorial exemption applies, Lawson contends, because the Attorney General in this instance was acting in his prosecutorial capacity. While Lawson's contentions are not without some merit, forcing us to reason differently than either court below, we nevertheless arrive

at the same bottom line they did—disclosure. To explain that conclusion, we begin our analysis with Lawson's claim under KRS 61.878(1)(h), the law enforcement exemption, and then address what we regard as his more substantial claim under the privacy exemption.[5]

## ANALYSIS

### I. Lawson Does Not Have Standing To Invoke KRS 61.878(1)(h).

The Open Records Act, of course, is primarily a disclosure statute. The Act's basic policy, the General Assembly has declared, "is that free and open examination of public records is in the public interest." KRS 61.871. The Act's basic rule, furthermore, is that "[a]ll public records shall be open for inspection by any person," KRS 61.872(1),[6] the only exceptions being those for which the General Assembly expressly provides. *Id.* Accordingly, although the Act itself does indeed provide for several exceptions from its general mandate of disclosure, those exceptions are to be "strictly construed," KRS 61.871; an agency relying on an exception bears the burden of proof, KRS 61.882(3); and for records that contain both excepted and nonexcepted material, it is the agency's duty to "separate the excepted and make the nonexcepted material available for examination." KRS 61.878(4).

**5.** In ORA cases, we review the trial court's factual findings, if any, for clear error, but our review is plenary of issues concerning the construction or application of the Act. *Commonwealth v. Chestnut*, 250 S.W.3d 655 (Ky. 2008). Because in this case the trial court entered summary judgment on what were essentially agreed facts, our review, as was the Court of Appeals', is *de novo*.

**6.** In pertinent part the Act defines a "public record" as "all books, papers, maps, photographs, cards, tapes, discs, diskettes, record-

ings, software, or other documentation regardless of physical form or characteristics, which are prepared, owned, used, in the possession of or retained by a public agency." KRS 61.870(2). "Public agency" in turn means, among other things, "[e]very state or local government officer [and] [e]very state or local government department." KRS 61.870(1)(a)-(b). There is no dispute that the Attorney General and his Office are "public agenc[ies]" under the Act, or that Lawson's 1983 proffer and its related documents are "public records."

To help ensure that its provisions are honored, the Act creates a cause of action in "the Circuit Court of the county where the public agency has its principal place of business or the Circuit Court of the county where the public record is maintained," KRS 61.882(1), whereby "any person" may apply for an "injunction or other appropriate order" "to enforce the provisions of KRS 61.870 to 61.884." *Id.* Most cases brought pursuant to section 882 pit an ORA requestor seeking disclosure against a recalcitrant agency, but as noted at the outset of this Opinion, in *Beckham v. Board of Education,* 873 S.W.2d at 575, we observed that by extending the KRS 61.882 cause of action to "any person," the General Assembly had also granted those "who seek to prevent disclosure ... a litigation remedy to enforce the [Act's] exclusions." 873 S.W.2d at 578. We held, accordingly, in *Beckham* that a school teacher had standing under the Act to challenge, as a violation of the Act's privacy exemption, the Board of Education's decision to disclose disciplinary and grievance records pertaining to the teacher.[7]

Relying on *Beckham,* Lawson seeks to prevent disclosure of his 1983 proffer, and purports to invoke two of the Act's exclusions as applicable bars. He invokes first the privacy exemption, KRS 61.878(1)(a), which excludes from the Act's mandatory disclosure provisions "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." Inasmuch as Lawson, like the teacher in *Beckham,* alleges that the release of the contested record would unlawfully invade his personal privacy, there is little doubt that his claim is of the sort the General Assembly intended the privacy exemption to encompass, and thus no one has challenged his standing to assert it.

Lawson would also invoke, however, that portion of KRS 61.878(1)(h), which provides that

> records or information compiled and maintained by county attorneys or Commonwealth's attorneys pertaining to criminal investigations or criminal litigation shall be exempted from the provisions of KRS 61.870 to 61.884 and shall remain exempted after enforcement action, including litigation, is completed or a decision is made to take no action.

The General Assembly enacted this portion of the statute in 1992, and by thus according blanket protection to the investigatory and prosecutorial files of county and Commonwealth's attorneys, relieved those agencies of the need to justify nondisclosure by a showing, otherwise required, that disclosure would harm the agency by revealing an informant or by compromising in some way a prospective enforcement action. The parties debate whether the Attorney General can ever be deemed a "Commonwealth's attorney" for the purposes of this provision, but because we are convinced that Lawson does not, in any event, have standing to invoke this exemption, we need not weigh in on that debate. As noted above, the trial judge also thought Lawson was without standing to invoke the (1)(h) exemption. We agree,

---

**7.** Federal courts have recognized a similar cause of action whereby individuals may seek to enforce exemptions from the federal counterpart of the ORA, the Freedom of Information Act ("FOIA"). So called reverse-FOIA actions arise, however, not directly from the FOIA, but from the federal Administrative Procedure Act in conjunction with the FOIA and some other statute implicating the interests protected by a FOIA exemption. *See, for example, Campaign for Family Farms v. Glickman,* 200 F.3d 1180 (8th Cir.2000) (describing the federal cause of action).

although our reasons differ somewhat from his.

■ "Standing," of course, in its most basic sense, refers to an integral component of the "justiciable cause" requirement underlying the trial court's jurisdiction. Ky. Const. § 112; *Rose v. Council for Better Education*, 790 S.W.2d 186 (Ky. 1989). To invoke the court's jurisdiction, the plaintiff must allege an injury caused by the defendant of a sort the court is able to redress. *Id.* Lawson has standing in this sense, inasmuch as he has alleged an imminent violation of his statutory right to personal privacy within the trial court's power to enjoin. "Standing" can also refer to various judicially-created limitations on the exercise of jurisdiction, such as "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiffs complaint fall within the zone of interests protected by the law invoked." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). It is not, however, standing in this so-called prudential sense with which we are concerned.

■ We are concerned rather with what courts have referred to as "statutory standing." Standing in this sense has to do with " 'whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action.' " *Small v. Federal National Mortgage Association*, 286 Va. 119, 747 S.E.2d 817 (2013) (quoting *CGM, LLC v. Bell-South Telecomm., Inc.*, 664 F.3d 46, 52 (4th Cir.2011)). The question is whether the plaintiff is among the class of persons authorized by the statute to bring suit, and

as such "statutory standing" is not a jurisdictional question, but is essentially a matter of statutory construction.[8] We so held, in effect, although without using the phrase "statutory standing," in *Harrison v. Leach*, 323 S.W.3d 702 (Ky.2010) (holding that grandparents' standing to bring suit under a custody statute was not a jurisdictional question that the Court of Appeals could raise on its own motion). And we applied the concept, although again without the phrase, in *Rector v. City of Bowling Green*, 594 S.W.2d 891 (Ky. 1979) (holding that non-industrial property owners did not have standing under the asserted statute to challenge an annexation).

■ The question this case presents is who, aside from the agency in charge of the records, has standing to assert the ORA's exemptions as bars to disclosure. Our answer is that such standing is limited to those persons or entities the particular exemption was meant to protect. The privacy exemption was clearly intended to protect individuals such as Lawson from unwarranted disclosures of personal information lodged, for whatever reason, in the government's' files. Lawson has standing, therefore, under the privacy exemption, to challenge a threatened disclosure allegedly violative of that protection. Lawson does not have standing to invoke the exemption in KRS 61.878(1)(h), however, because he is not among the class of persons that exemption was intended to protect. The portion of the exemption he purports to invoke is addressed to county attorneys and Commonwealth's Attorneys, not private citizens, and was clearly intended to shield prosecutors not only from disclosures potentially harmful to their infor-

---

**8.** Arguably the question is not really one of "standing" at all, but a question rather merely about one element of the asserted cause of action. Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L.Rev. 89 (2009).

mants or their prosecutions but from the cost, inconvenience, and disruption that compliance with the Act would visit upon their offices in particular. Because Lawson is not among the intended beneficiaries of this blanket exemption, he does not have standing to invoke it.

We acknowledge that at first glance the Act might seem to provide otherwise. Considered in isolation, KRS 61.882(1) appears to authorize "any person" to seek to enjoin any "violation" of the Act. Furthermore, by providing that records to which an exemption applies "shall be subject to inspection only upon order of a court of competent jurisdiction," KRS 61.878(1) appears to leave the agency with no discretion to waive an applicable exemption, even an exemption intended solely for the agency's benefit, with the result that any disclosure where an exemption applies might appear to "violate" the Act. Together, these provisions could be thought to authorize "any person" (such as Lawson) to seek to enforce the application of any exemption (such as the (1)(h) exemption) regardless of that person's relationship to the exemption. As the concurring Court of Appeals judge noted, moreover, and as Lawson emphasizes, the pertinent part of exemption (1)(h) provides that a prosecutor's criminal investigation and criminal prosecution records "shall be exempted" from the Act, and "shall remain exempted" even after the termination of any enforcement action. Again, the apparently mandatory language might appear to remove the exemption from the prosecutor's discretion and to make its application strictly a matter of law, a matter that "any person" might seek to have enforced against the prosecutor. For a couple of reasons, however, we are convinced that the General Assembly did not intend to mandate an iron rule of non-disclosure whenever an exemption applies.

In the first place, such a rule would run counter to the principle, fundamental in our law, that rights, even fundamental rights, may be waived. *Commonwealth v. Townsend*, 87 S.W.3d 12 (Ky.2002) (noting that fundamental rights are frequently waived); *Gonzalez v. United States*, 553 U.S. 242, 128 S.Ct. 1765, 170 L.Ed.2d 616 (2008) (same). Under Lawson's reading of these provisions, if the tables were turned and it was Lawson who, although entitled to invoke an ORA exemption, wanted to waive the exemption and to allow disclosure, the Attorney General, or any other person, could bring suit to enjoin the disclosure on the ground that disclosure would violate, the Act's rigid prohibition against disclosure of any exempt record. Although that result might not be so absurd as to be ruled out as such, it is certainly enough of a departure from the general rule of waivability to suggest that if that were truly the General Assembly's intent the Act would more expressly say so.

On the contrary, however, and this is our second and more fundamental reason for rejecting Lawson's approach, the Act's express policy, as noted above, is "the free and open examination of public records." Lawson's rigid-exemption reading runs directly counter to that policy by insisting upon nondisclosure even when the exemption's intended beneficiaries believe disclosure is appropriate. We decline to read KRS 61.882(1), 61.878(1), and 61.878(1)(h) in a manner so at odds with the Act's basic purpose, and instead we understand the General Assembly to have mandated, in the absence of a waiver, the non-disclosure of exempt records, a mandate the person or entity whose interest the exemption protects may seek to enforce in the circuit court. Disclosure of an otherwise exempt record is not precluded, however, if the intended beneficiaries of

the exemption waive their right to non-disclosure. As we understand it, therefore, the statutory mandate that prosecutorial files be and remain totally exempt accords the prosecutor an unlimited discretion to deny disclosure, but it does not preclude him or her from allowing it, assuming, of course, that no other exemption applies. We agree with the trial court and the Court of Appeals, therefore, that KRS 61.878(1)(h), even assuming *arguendo* that it applies here to the Attorney General's files, does not bar the Attorney General from disclosing Lawson's proffer.

## II. Disclosure of the Proffer Would Not Constitute a Clearly Unwarranted Invasion of Lawson's Privacy.

 Lawson's more substantial claim is that disclosure of his proffer would constitute an unwarranted invasion of his personal privacy, in violation of KRS 61.878(1)(a). As noted above, that exemption excludes from the Act's disclosure provisions "[p]ublic records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." Because the exemption applies only to "unwarranted" invasions of personal privacy and not to just any invasion, to determine whether a record should be withheld on this ground "there is but one available mode of decision, and that is by comparative weighing of the antagonistic interests." *Kentucky Bd. of Examiners of Psychologists v. Courier–Journal & Louisville Times Company,* 826 S.W.2d 324, 327 (Ky.1992). We must, that is, balance the interest in personal privacy the General Assembly meant to protect, on the one hand, against, on the other, the public interest in disclosure.

 We agree with Lawson, to begin with, that he has a more than *de minimus* interest in the confidentiality of his proffer. As the United States Supreme Court has noted with regard to parallel provisions of the federal Freedom of Information Act, the privacy exemption is implicated any time "disclosure of information which applies to a particular individual is sought from Government records." *United States Department of State v. The Washington Post Company,* 456 U.S. 595, 602, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982). Law enforcement records in particular, the mere association with which can be embarrassing and stigmatizing, if not worse, and which by their nature regularly contain information the individuals involved do not wish to disseminate, clearly implicate privacy concerns. Our courts have held, accordingly, that, in the absence of some substantial countervailing public purpose, records identifying or pertaining to identifiable witnesses, victims, and uncharged suspects of crimes or other statutory violations generally may not be disclosed. *Bd. of Examiners,* (witnesses who sought treatment from psychologist); *Cape Publications v. The City of Louisville,* 147 S.W.3d 731 (Ky.App.2003) (rape victims); *Lexington H–L Services, Inc. v. Lexington–Fayette Urban County Government,* 297 S.W.3d 579 (Ky.App.2009) (uncharged rape suspect); see also, *United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (holding, as a categorical matter, "that a third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy").

 Lawson's proffer, however, as the trial court and the Court of Appeals noted, is not the statement of a mere witness or an uncharged suspect. It followed his guilty plea in federal court to having (through his company) participated

in unlawful bidding for Kentucky highway construction contracts, and it formed a part of his similar "settlement" with the Attorney General, in which he again acknowledged unlawful dealings, dealings calling for restitution, with the Kentucky Department of Transportation. We agree with the courts below that in this context Lawson's privacy interests are significantly diminished. Nevertheless, even persons convicted of crimes may retain some privacy interest in the related records. *Reporters Committee, supra; American Civil Liberties Union v. United States Department of Justice,* 655 F.3d 1 (D.C.Cir.2011). Recognizing that Lawson's proffer implicates some privacy interest, we turn to whether disclosure is warranted by a sufficiently important public purpose.

The warrant for disclosure, it bears repeating, must be a *public* purpose. The ORA is generally not intended to enable private citizens to find out information about other, identifiable private citizens, information disclosed to the government more often than not only under compulsion. The Act, rather, was intended to make transparent the operations of the state's agencies. "The public's 'right to know' under the Open Records Act," we observed in *Bd. of Examiners,* "is premised upon the public's right to expect its agencies properly to execute their statutory functions. In general, inspection of records may reveal whether the public servants are indeed serving the public, and the policy of disclosure provides impetus for an agency steadfastly to pursue the public good." 826 S.W.2d at 328. Cf. *United States Department of Defense v. Federal Labor Relations Authority,* 510 U.S. 487, 497, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) (Federal act, FOIA, enables citizens "to be informed about what their government is up to."). Disclosures that shed no

meaningful light on agency performance cannot warrant an invasion of a private citizen's privacy.

On the other hand, where an individual's dealings with an agency do significantly implicate how the agency is carrying out its functions or exercising its discretion, we have not hesitated to find that privacy interests must yield to the public's right to know what its government is up to. In *Cape Publications, Inc. v. University of Louisville Foundation, Inc.,* 260 S.W.3d 818 (Ky.2008), for example, we held that because donors to a public university might hope to influence with their donations the university's policies or decisions or to receive benefits from the university in return, the donors' identities and the amounts of their gifts came within the ORA's disclosure provisions, notwithstanding the breach of privacy thereby entailed.

Similarly, in *Central Kentucky News–Journal v. George,* 306 S.W.3d 41 (Ky. 2010) and *Lexington–Fayette Urban County Government v. Lexington Herald–Leader Company,* 941 S.W.2d 469 (Ky. 1997), we addressed requests for disclosure of settlement agreements in law suits brought by private citizens against, respectively, a school board and a police department. Notwithstanding confidentiality agreements between the parties, we held that the settlements were subject to disclosure. The public's keen interest in knowing the terms of the settlements—the amount of public funds paid out by the agencies in compensation for what injuries to whom—easily outweighed, we explained, the recipients' interest in keeping the settlements private.

Seeking to distinguish his case from these precedents, Lawson emphasizes that the general terms of his 1983 settlement agreement with the Attorney General—the reinstatement of Lawson's company's bidding privilege in exchange

for $112,000 in restitution and cooperation with the Attorney General's investigation—have long been a matter of public knowledge. In our view, however, the substance of the proffer remains significant because of its connection to the conduct of two agencies, the Transportation Cabinet and the Attorney General's office. Lawson's admitted involvement in a successful attempt to circumvent the Cabinet's competitive bidding regulations gives the public, we believe, a legitimate interest in finding out how that could be accomplished, as explained by someone who admits doing just that. Even if Cabinet officials were not involved in the bidding conspiracy, the public has still an interest in hearing how those officials were hoodwinked into paying hundreds of thousands of taxpayer dollars in excessive highway construction fees. Furthermore, this was not a run-of-the-mill police investigation into an ordinary crime. Lawson admitted to serious misconduct against the Commonwealth itself, misconduct that cost Kentucky taxpayers. The public has a legitimate interest in finding out in some detail how the Attorney General responded, including the substance of the questions posed during Lawson's proffer. Given the proffer's significant connection to "what the government is up to," and given Lawson's attenuated privacy interest, there is no real doubt that the balance tips in favor of disclosure. That is not to say that personal information Lawson may have revealed with no connection to the alleged bid rigging (*e.g.*, a medical condition or family matters) may not be redacted; it may be. However, the possibility of a limited amount of purely personal information does not justify the blanket nondis-

closure of a record with substantial public import.

■■■ Against this conclusion Lawson insists that even if the public may once have had a legitimate interest in the details of his 1983 proffer, the incident it concerns is water so far over the dam that no public interest remains. We disagree. While it may well be, as Lawson argues, that the interests reckoned on the privacy side of the balance generally do not dissipate, and in some instances even grow stronger, with the passage of time, *Fitzgibbon v. CIA*, 911 F.2d 755 (D.C.Cir.1990); *Diamond v. Federal Bureau of Investigation*, 707 F.2d 75 (2nd Cir.1983), it is no less true that the public's interest in knowing what the government is up to includes a strong historical interest in knowing what the government *was* up to. *American Friends Service Committee v. Webster*, 720 F.2d 29 (D.C.Cir.1983) (construing various federal statutes concerning the management and preservation of governmental records and discussing the historical value many such records acquire). The passage of time, therefore, while a factor relevant to the balancing of interests required by the privacy exemption, will seldom be dispositive in-and-of itself. Lawson asserts that "[t]here is nothing historically significant about what went on among the contractors involved in building Highway 25E through southeast Kentucky over 30 years ago." But sadly, as the facts giving rise to this case show, concerns about the integrity of highway construction contract bidding are still with us, and the public has a valid interest in the history of that concern.[9] That public in-

---

9. The dissent completely ignores the pertinent fact that Lawson's proffer became the subject of an ORA request in 2009—only *four* years ago—when Lawson was under indictment in federal court for conspiring to obtain confidential bid information. The dissent's heavy reliance on the Supreme Court's decision in *Reporters Committee*, moreover, is misplaced. In a key respect, this case is very unlike that one. There the Freedom of Information Act

terest outweighs Lawson's interest in having his 1983 proffer shrouded from public inspection.

## CONCLUSION

In sum, Lawson's 1983 proffer of information to the Attorney General is to be disclosed. Even if KRS 61.878(1)(h) applies to the Attorney General's records in this case, Lawson does not have standing to invoke that provision, and under it the Attorney General has the discretion to disclose records if in his view it is in the interest of his office and of the public to do so. Lawson's invocation of the privacy exemption, KRS 61.878(1)(a), is likewise unavailing. The admitted breach of Transportation Cabinet contracting regulations and the Attorney General's response to that breach remain, even thirty years after the fact, matters of sufficient public interest to warrant an invasion of Lawson's limited interest in keeping his account of the matter under wraps. Accordingly, we hereby affirm the decision of the Court of Appeals.

MINTON, C.J.; CUNNINGHAM, and VENTERS, JJ., concur. SCOTT, J., concurs in part and dissents in part by separate opinion in which KELLER, J., joins. NOBLE, J., not sitting.

SCOTT, J., concurring in part and dissenting in part.

Although I concur in the majority's conclusions that KRS 61.878(1)(h) [10] and KRS 17.150(2) are not applicable, I must respectfully dissent from the majority's Opinion in regard to its analysis and result under KRS 61.878(1). I do so because I believe the majority justifies trumping Appellant Lawson's acknowledged privacy interest by asserting an illusory public interest in actions taken by the Attorney General's Office and the Department of Transportation in 1983 under then Governor John Y. Brown's administration, some thirty years ago. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (where, in addressing the privacy exemption under the Freedom of Information Act ("FOIA"), the United States Supreme Court acknowledged that "the extent of protection accorded a privacy right at common law rested in part on the degree of dissemination of the allegedly private fact and the extent to which *the passage of time rendered it private*") (emphasis added); *cf. Fitzgibbon v. C.I.A.*, 911 F.2d 755, 768 (D.C.Cir.1990) (explaining that privacy interests under the privacy exemption do not diminish "even after the passage of time"); *Brown v. U.S. Dep't. of Justice*,

---

request was for a private citizen's criminal history "rap sheet" where there was no suggestion that the documented crimes had anything to do with or revealed anything about the government. Lacking any pertinence to "what the government was up to," the Supreme Court held, the rap sheet was not subject to the FOIA's disclosure requirement. Here, by contrast, Lawson's statement followed immediately his guilty plea in federal court to charges that through his company he had unlawfully obtained state highway construction contracts. The statement was made to state officials investigating that unlawful activity, activity directly pertaining to the state's performance of its role as a provider of

highways. Because Lawson's statement, unlike the rap sheet at issue in *Reporters Committee*, bears directly on "what the government was up to," that case, to the extent that it suggests a result here at all, suggests that Lawson's statement must be disclosed.

10. The Attorney General's brief acknowledges the inapplicability of KRS 61.878(1)(h) to his office: "The General Assembly recognized that the OAG's role is significantly different, and properly did not include the OAG in the list of prosecutorial entities [excepted under KRS 61.878(1)(h) ]."

742 F.Supp.2d 126, 131 (D.D.C.2010) (clarifying that, under the privacy exemption, "[P]rivacy interests of the persons mentioned in [ ] investigatory files do not necessarily diminish with the passage of time.").

In arriving at my conclusion, I note that the proffered testimony requested relates to the actions of various contractors dealing with the construction of U.S. Route 25E across southeast Kentucky in the late 1970s and early 1980s. I also note, the open records requests *did not seek* official information concerning the connected or subsequent conduct of the governmental agencies involved. Indeed, it is quite a stretch to suggest that what the Commonwealth of Kentucky's Transportation Cabinet did or did not do from 1979 to 1983, during John Y. Brown's administration, is of great public interest or importance today. Because I believe the personal privacy exemption of the Kentucky Open Records Act ("ORA"), KRS 61.870 *et seq.,* was written into the Act for good reason, the exemption should be enforced when there is not a sufficiently important public interest in revealing what is now stale, thirty-year-old private information. Thus, I must respectfully dissent.

As the majority recounts, KRS 61.878(1)(a) exempts from the ORA's disclosure provisions personal information contained in public records where disclosure would amount to "a clearly unwarranted invasion of personal privacy." The determination of whether an invasion of privacy is "clearly unwarranted" consists of weighing the public interest in disclosure against an individual's interest in privacy. *Kentucky Bd. of Exam'rs of Psychologists v. Courier–Journal & Louisville Times Co.,* 826 S.W.2d 324, 327 (Ky.1992). "Moreover, the question of whether an invasion of privacy is 'clearly unwarranted' is intrinsically situational, and can only be

determined within a specific context." *Id.* at 328. Although stated by the majority, it bears repeating that "the only public interest relevant for purposes of [e]xemption . . . is one that focuses on the citizens' right to be informed what their government is up to." *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1115 (D.C.Cir. 2007); *see also Bd. of Exam'rs,* 826 S.W.2d at 328 ("The public's 'right to know' under the [ORA] is premised upon the public's right to expect its agencies properly to execute their statutory functions.").

The United States Supreme Court, in *Reporters Committee, supra,* addressed the tension between open access to public records against an individual's right to privacy as to personal information contained in public records. There the Court dealt with a FOIA request by a CBS news correspondent and the Reporters Committee for Freedom of the Press for the "rap sheet" of Charles Medico, a member of a purported organized crime family involved in obtaining defense contracts through a corrupt Congressman. *Reporters Comm.,* 489 U.S. at 751, 757, 109 S.Ct. 1468. The issue faced by the Court was "whether the disclosure of the contents of such a file to a third party 'could reasonably be expected to constitute an unwarranted invasion of personal privacy' within the meaning of [FOIA's personal privacy exemption]." *Id.* at 751, 109 S.Ct. 1468. The Court observed that FOIA's purpose, like the Kentucky Open Records Act's, is to assure that citizens are "informed about 'what their government is up to.'" *Id.* at 773, 109 S.Ct. 1468. As a result,

Official information that sheds light on an agency's performance of its statutory duties falls squarely within that statutory purpose. That purpose, however, is *not fostered* by disclosure of information about *private citizens that is accumulated in various governmental files* but

that *reveals little or nothing about an agency's own conduct.*

*Id.* (emphasis added). In applying the FOIA personal privacy exemption to the request for the rap sheet of a private citizen, the Court observed that

Although there is undoubtedly some public interest in anyone's criminal history, especially if the history is in some way related to the subject's dealing with a public official or agency, the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed. Thus, it should come as no surprise that *in none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen.*

*Id.* at 774–75, 109 S.Ct. 1468 (final emphasis added). This reasoning led the Court to conclude:

[W]e hold as a categorical matter that a third party's request for law enforcement records or information *about a private citizen* can reasonably be expected to *invade the citizen's privacy,* and that when the request seeks *no "official information" about a Government agency,* but merely records that the Government happens to be storing, *the invasion of privacy is "unwarranted."*

*Id.* at 780, 109 S.Ct. 1468 (emphasis added).

In this case, the open records request did not seek "official information" about any government agency; particularly not former-governor John Y. Brown's Department of Transportation, nor the 1979–1983 Attorney General's Office. The request asked for "*a copy of a statement, interview*

transcript, or proffer of testimony give [sic] to investigators of the Office of the Attorney General *by Leonard Lawson* in 1983." (emphasis added).

Here, the majority, via its flawed weighing process, opines that disclosure of Lawson's thirty-year-old proffer of evidence is not an unwarranted invasion of privacy. Yet, in its examination of Lawson's personal privacy interest, the majority admits that law enforcement records can be "embarrassing and stigmatizing" and that they "clearly implicate privacy concerns." Furthermore, the majority's Opinion concedes that our courts have repeatedly held that, absent a substantial countervailing public purpose, records pertaining to uncharged suspects of crimes may not be disclosed. *Id.; Cape Publications v. City of Louisville,* 147 S.W.3d 731 (Ky.App.2003); *Lexington H–L Servs., Inc. v. Lexington–Fayette Urban Cnty. Gov't,* 297 S.W.3d 579 (Ky.App.2009). Nonetheless, the majority attempts to minimize Lawson's privacy rights by asserting that they were somehow diminished when he entered into a "settlement" with the Attorney General.

To the contrary, I believe that Lawson retains a substantial privacy interest in the proffer because Lawson's privacy interest is analogous to that of an individual who was investigated for a crime but never charged. *See ACLU v. U.S. Dep't of Justice,* 655 F.3d 1, 7 (D.C.Cir.2011) (stating that individuals who have been investigated but not publicly charged have substantially stronger privacy interests than individuals who were convicted or acquitted).

The majority cites *Cape Publications v. University of Louisville Foundation,* 260 S.W.3d 818 (Ky.2008), as an example of the public's interest in disclosure outweighing citizens' interests in privacy. *Cape Publications* pitted donors' privacy rights in having their identities disclosed against

the public's right to know whether the donors had received, or were currently receiving, benefits from the university in return. *Id.* However, *Cape Publications* is not comparable to the present case because there is nothing "embarrassing" or "stigmatizing" about having the public know who made a charitable donation. Some donors go to great lengths to ensure that the public is made aware of their contributions. It is simply common sense that a person who was involved in a criminal investigation but was not charged has an incomparably greater interest in privacy than a benevolent donor. Therefore, the public interest at issue must be significant in order for it to be sufficiently important to overcome the privacy interest of Lawson.

Plainly then, after a lapse of thirty years, the public interest asserted by Appellees lacks the requisite significance to justify intrusion into Lawson's privacy today. The pretextual public interest asserted by Appellees is that Lawson's proffer of evidence to the Attorney General, some thirty years ago, might reveal improper activity on the part of the state agencies involved or that it might shed light on how the Attorney General's Office approaches investigations. Admittedly, there is a legitimate public interest in informing the public how an Attorney General approaches investigations. But I am at a loss in trying to surmise how a proffer given to the Attorney General's Office three decades ago will shed light on the activities of our current Attorney General or, for that matter, our current Kentucky Department of Transportation. *See Judicial Watch, Inc. v. U.S. Dep't of Justice,* 898 F.Supp.2d 93, 106 (D.D.C.2012) ("[A] decision not to prosecute a person, standing alone, does very little to shed[ ] light on the agency's performance of its statutory duties.") (citations omitted) (internal quotation marks omitted).

Furthermore, I fail to see how information relating to the Department of Transportation as it was run under the John Y. Brown administration will provide any useful information on how that agency is run today under Governor Steven Beshear. Considering the political and technological changes of the last thirty years, it is impossible to extrapolate the operations of our modern agencies from their actions thirty years ago. Thus, I find the public value of Lawson's proffer to be miniscule because it will do nothing to tell the public whether state agencies are executing their statutory functions today, thirty years later. *Bd. of Exam'rs,* 826 S.W.2d at 328.

To support its logic, the majority cites two cases where we ordered disclosure of settlement agreements in private citizen suits against a school board and a police department in an effort to show that settlement agreements can elucidate agency action. *Central Kentucky News–Journal v. George,* 306 S.W.3d 41 (Ky. 2010); *Lexington–Fayette Urban County Government v. Lexington Herald–Leader Company,* 941 S.W.2d 469 (Ky.1997). However, these cases are inapposite. In both cases, we found that the public had a keen interest in determining how agencies were using public funds to compensate for injuries—and rightfully so. But, the key difference between these cases and the present case is that the requests for information were made timely to the settlements, not thirty years later, thus disclosure of the agencies' actions was likely to offer then current insight into the functioning of the agency involved.

Yet, under the majority's reasoning in this case, if the school board settled a case thirty years ago, statements made by the parties involved would be disclosed despite the fact that an entirely different school board would be in place and that changes

in the law over the last thirty years have dramatically altered how lawsuits are, or would be, settled. It is inconceivable that such information would then be of any value to the public in the knowledge of the operations of its government.

Moreover, and more to the point, I cannot see how this case is about anything more than the Appellant, Lawson. Appellees requested a copy of any statements given by Lawson in a 1983 Attorney General's investigation. Appellees' request centered on a private individual and sought no official information about the government agencies involved. *See Reporters Comm.*, 489 U.S. at 774–75, 109 S.Ct. 1468 ("[I]n none of our cases construing the FOIA have we found it appropriate to order a Government agency to honor a FOIA request for information about a particular private citizen."). Despite the pretextual current public interest in the actions of agencies thirty years ago asserted by Appellees, their request for Lawson's proffer is not about finding out whether state agencies are executing their functions today; it is about trying Lawson again in the court of public opinion concerning matters disclosed to the Attorney General in 1983. *See id.* at 773, 109 S.Ct. 1468 (explaining that when a requester seeks documents relating to a private citizen, "the requester does not intend to discover anything about the conduct of the agency that has possession of the requested records."). Such an intent or interest is not a protected intent or interest under the ORA and it should not be entitled to any weight.

Considering that Lawson retains a significant privacy interest in his involvement in the law enforcement investigation of 1983, and given that Appellees have offered nothing more than a pretextual public interest in actions taken by state agencies more than three decades ago, I would find that disclosure of the proffer constitutes a "clearly unwarranted invasion of privacy" under KRS 61.878(1)(a).

And, after Lawson's proffer is *made public* under the majority's Opinion, this Court should ask itself just what the public learned about the functioning of our current state agencies from the disclosure ordered herein. I fear that the answer will not justify this intrusion into Lawson's privacy interests in matters that occurred more than thirty years ago. Thus, I dissent from the analysis and result on this issue. Keller, J., joins.