RENDERED:  SEPTEMBER 24, 2020
TO BE PUBLISHED

# Supreme Court of Kentucky

2018-SC-0677-DG

KENTON COUNTY BOARD OF                                    APPELLANTS
ADJUSTMENT; PLANNING AND
DEVELOPMENT SERVICES OF KENTON
COUNTY; AND NORTHERN KENTUCKY
AREA PLANNING COMMISSION


                        ON REVIEW FROM COURT OF APPEALS
V.                         CASE NO. 2016-CA-1246
                   KENTON CIRCUIT COURT NO. 16-CI-00056


IAN MEITZEN; DONALD L. NAGELEISEN;                          APPELLEES
JESSICA SWOPE; AIMEE GLOVER; AND
VIRGINIA DUPONT


**OPINION OF THE COURT BY JUSTICE HUGHES**

**REVERSING AND REMANDING**

After the Kenton County Board of Adjustment unanimously granted approval of Jessica Swope and Aimee Glover's conditional use application to allow the operation of The Growing Place, a nursery school in a residential zone, adjoining property owners Ian Meitzen and Donald Nageleisen initiated an administrative appeal pursuant to Kentucky Revised Statute (KRS) 100.347(1).  The circuit court dismissed the appeal because Meitzen and Nageleisen failed to claim that they were "injured or aggrieved" by a final action of the Board, as required by the plain language of the statute.  The Court of Appeals reversed the circuit court order, finding that substantial compliance with the statute authorizing the appeal was sufficient.  We granted

discretionary review to determine whether a party must claim to be "injured or aggrieved" to perfect an appeal to circuit court under KRS 100.347(1). Having concluded that Kentucky law requires exactly that, we reverse the Court of Appeals' decision.

## FACTS AND PROCEDURAL HISTORY

In 2015, Jessica Swope and Aimee Glover filed with the Planning and Development Services of Kenton County (PDS)[1] a conditional use permit application which would allow them to operate a commercial nursery school, The Growing Place, on property owned by Virginia Dupont. PDS submitted a report to the Kenton County Board of Adjustment[2] recommending approval of the permit application. During a public meeting held on December 16, 2015, adjoining property owners Daniel Gaddis, Ian Meitzen and Donald Nageleisen[3] spoke in opposition to the application. Following the hearing, the Board unanimously granted the application.

On January 13, 2016 and pursuant to KRS 100.347(1), Gaddis, Meitzen and Nageleisen filed an appeal with the Kenton Circuit Court against the Board, PDS, Northern Kentucky Area Planning Commission,[4] Swope, Glover

---

[1] PDS is an area planning commission that provides planning and zoning services to the Kenton County Board of Adjustment (the Board) and other governmental entities. When applications for conditional use permits and variances are filed, PDS generates reports and makes recommendations to the Board.

[2] The Kenton County Board of Adjustment is established under KRS Chapter 100 to make determinations regarding land use, including granting or denying applications for conditional use and zoning variances.

[3] Daniel Gaddis was originally part of the appeal but requested to be dismissed from the action. The circuit court issued an agreed order of dismissal as to Gaddis on May 9, 2016.

[4] The Northern Kentucky Area Planning Commission is the former name of the PDS.

2

and Dupont. The complaint alleged that the Board's action was improper because it did not meet the requirements of the Kenton County Zoning Ordinance and certain statutory requirements. The complaint further stated that the subject location is on a very dangerous curve, posing risks to those in the vicinity. According to Meitzen and Nageleisen, Swope and Glover failed to meet the burden of proving that "the conditional use will not be detrimental to the health, safety or general welfare of persons residing or working in the vicinity . . . ." Additionally, Meitzen and Nageleisen stated that "to place a daycare facility in this area would put the general public and our school children in immediate and present danger."

PDS responded to the complaint, stating that Meitzen and Nageleisen failed to plead that they had been injured or aggrieved by a final action of the Board, as required by KRS 100.347(1). In its answer, the Board also asserted that Meitzen and Nageleisen failed to comply with KRS 100.347(1).

On February 9, 2016, PDS filed a motion for summary judgment or, in the alternative, a motion to dismiss. PDS argued that an appeal from an administrative decision requires strict statutory compliance and, because Meitzen and Nageleisen failed to strictly comply by claiming they were "injured or aggrieved" as provided in KRS 100.347(1), the circuit court lacked jurisdiction to consider the appeal. PDS also asserted that the summons was improper and untimely, and that it is not a necessary party to a KRS 100.347 appeal. Swope and Glover filed their own motion for summary judgment or, in the alternative, judgment on the pleadings, also contending the appeal should not proceed because Meitzen and Nageleisen failed to claim they were injured or aggrieved.

3

Responding to both motions, Meitzen and Nageleisen asserted that as adjacent property owners they were injured and aggrieved by the Board's action. They cited *Davis v. Richardson,* 507 S.W.2d 446, 448 (Ky. 1974), to argue that their status as adjacent property owners is sufficient to satisfy the "injured or aggrieved" requirement of KRS 100.347(1). Simultaneously, Meitzen and Nageleisen filed a motion to amend their complaint pursuant to Kentucky Rule of Civil Procedure (CR) 15.01.

On June 3, 2016, the circuit court entered an order of dismissal, finding that Meitzen and Nageleisen failed to allege in their complaint that they were injured or aggrieved by the final action of the Board. While the complaint alleged that Swope and Glover did not prove that the conditional use would not be detrimental to the health, safety and welfare of the community and that the Board failed to consider potential danger to children at a neighboring school, the complaint did not satisfy the "claim" of being "injured or aggrieved" requirements of KRS 100.347(1). Without an express claim that Meitzen and Nageleisen themselves were injured or aggrieved in some way by the Board's action, the circuit court concluded it lacked subject matter jurisdiction.

Although Meitzen and Nageleisen sought to amend their deficient complaint, at that point it was more than sixty days after the time for perfection of the appeal expired. Because the Kentucky Rules of Civil Procedure do not apply in this type of litigation until after an appeal has been perfected, the circuit court denied the motion to amend the complaint, citing *Board of Adjustments v. Flood,* 581 S.W.2d 1, 2 (Ky. 1978). The circuit court dismissed the action with prejudice and then denied Meitzen and Nageleisen's ensuing motion to alter, amend or vacate.

On appeal, the Court of Appeals reversed the circuit court in a 2-1 decision. The majority determined that "[t]here is nothing in the language of KRS 100.347(1) that requires appealing parties to specifically allege they were 'injured or aggrieved' in their complaint in order for the circuit court to have jurisdiction." The Court of Appeals interpreted the "injured or aggrieved" language to be a standing requirement, not a jurisdiction requirement.

In so ruling, the Court of Appeals addressed the earlier decision of *Spencer County Preservation, Inc. v. Beacon Hill, LLC,* 214 S.W.3d 327 (Ky. App. 2007), in which it interpreted the "injured or aggrieved" language as used in a different subsection of KRS 100.347. In that case, the Court of Appeals held that in order to pursue an appeal under KRS 100.347(3) a party must allege in the complaint that the party has been injured or aggrieved. *Id.* at 329. The *Spencer County Preservation* Court distinguished standing from jurisdiction and ultimately concluded that the circuit court lacked jurisdiction to hear the appeal.

Here, the Court of Appeals disagreed with the holding in *Spencer County Preservation*, finding that its "hyper technical strict compliance view" of KRS 100.347(3) was improper. The appellate court also determined that, pursuant to *Kentucky Farm Bureau Mut. Ins. Co. v. Conley*, 456 S.W.3d 814 (Ky. 2015), only substantial compliance is required when pursuing an appeal, with two exceptions – the failure to timely file a notice of appeal or the failure to name an indispensable party. Because Meitzen and Nageleisen timely filed the notice of appeal and named all indispensable parties, the Court of Appeals concluded nothing more was required.

5

The Court of Appeals further determined that the circuit court erred in denying Meitzen and Nageleisen the opportunity to amend their complaint pursuant to CR 15.01. Accordingly, the appellate court reversed and remanded the circuit court order of dismissal and the order denying the motion to alter, amend or vacate, and directed the circuit court on remand to enter an order granting Meitzen and Nageleisen's motion to amend their complaint.

One judge on the appellate panel dissented, finding that the majority opinion creates an absurd and inconsistent result. Judge Acree opined that the circuit court properly followed the precedent established in *Spencer County Preservation,* 214 S.W.3d 327, and that the order of dismissal should be affirmed. On the Board's motion,[5] we granted discretionary review to interpret the requirements of KRS 100.347(1).

## ANALYSIS

This case presents an issue of statutory interpretation: whether KRS 100.347(1) requires a party to claim to be injured or aggrieved by a final action of a board of adjustment to perfect an appeal in circuit court. Statutory interpretation is a question of law, which we review *de novo. Saint Joseph Hosp. v. Frye,* 415 S.W.3d 631, 632 (Ky. 2013).

### I.       The language of KRS 100.347(1) is clear and unambiguous.

KRS 100.347(1) creates a statutory right to appeal from a final action of a board of adjustment. It states:

> Any person or entity claiming to be injured or aggrieved by any final action of the board of adjustment shall appeal from the action to the Circuit Court of the county in which the property, which is the subject of the action of the board of adjustment, lies.

---

[5] All appellants will collectively be referred to as "the Board."

Such appeal shall be taken within thirty (30) days after the final action of the board. All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review. The board of adjustment shall be a party in any such appeal filed in the Circuit Court.

The issue in this case arises from the first sentence of the statute, specifically, "[a]ny person or entity *claiming to be injured or aggrieved* . . . ." (emphasis added). To interpret this language, our inquiry

> begins and ends with application of the cardinal rule: "the intention of the legislature should be ascertained and given effect." Discerning legislative intent requires a focus on the words chosen by the legislature. If those words, given their common understanding and meaning, are clear or unambiguous, our task is complete—we simply apply the will of the legislature. Only when a statute is ambiguous do we reach for more extensive interpretative aids.

*Allstate Ins. Co. v. Smith*, 487 S.W.3d 857, 860–61 (Ky. 2016) (quoting *Jefferson Cty. Bd. of Educ. v. Fell*, 391 S.W.3d 713, 718 (Ky. 2012)) (citations omitted).

The parties contest what is required by the "claiming to be injured or aggrieved" portion of the statute. Where a statute is clear and unambiguous, "we are not free to construe it otherwise . . . ." *MPM Fin. Grp., Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky. 2009). Although KRS Chapter 100 does not provide definitions for "claiming," "injured," or "aggrieved," we look to the common meanings of these words to determine what the legislature intended when enacting KRS 100.347(1). Merriam Webster's Dictionary defines "claim" as "to assert in the face of possible contradiction," "to ask for," and "a demand for something due or believed to be due."[6] According to Black's Law Dictionary (11th ed. 2019), "claim" has several meanings, such as "[t]he assertion of an

---

[6] *Claim,* MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/claim (last visited Jul. 29, 2020).

existing right; any right . . . to an equitable remedy . . . ." It can also mean "[a] demand for . . . a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." As for "injury," Merriam Webster defines it as "hurt, damage, or loss sustained," and as a "violation of another's rights for which the law allows an action to recover damages."[7] Finally, "aggrieved" is defined as "suffering from an infringement or denial of legal rights," and "showing or expressing grief, injury, or offense."[8] Taking the plain meanings of these words in the context of KRS 100.347(1), we conclude that a party pursuing an appeal from a board of adjustment must claim some type of hurt or damage, or some form of suffering or infringement that the party will experience as a result of the board's decision.

The only reasonable method by which a person or entity can "claim" to be injured or aggrieved by a final decision of a board of adjustment when initiating an appeal in circuit court is through their complaint. But Meitzen and Nageleisen failed to provide any factual allegations to support a claim that they themselves were injured or aggrieved in some way by the Board's action. In fact, the words "injured" or "aggrieved" (or even synonyms of those words) do not appear anywhere in their complaint. While these particular words are not necessarily required, a complaint pursuant to KRS 100.347(1) must reflect how the plaintiff fits into the statutory language authorizing an appeal. Meitzen and Nageleisen explain how they believe the Board erred legally but they fail to

---

[7] *Injury,* MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/injury (last visited Jul. 29, 2020).
[8] *Aggrieved,* MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/aggrieved (last visited Jul. 29, 2020).

8

state how the alleged errors affect them or cause injury to them. In fact, the complaint reads solely as a critique of the Board's decision to grant the conditional use permit, not as a claim on behalf of parties who are themselves injured or aggrieved.

The language in KRS 100.347(1) is clear and unequivocal – a party must *claim* to be "*injured or aggrieved*" by a board's final action. The legislative intent is apparent from the words used in the statute. While the General Assembly could have allowed any person residing in the county, for example, to initiate an appeal from a board of adjustment decision, the legislature deliberately limited appeals to those instances where a person or entity could claim to be actually injured or aggrieved by the board's action. This specific jurisdictional requirement imposed by the legislature is clear and unambiguous. Because the judiciary's role in statutory construction cases is to see that "the will of the legislature" is applied, *Allstate Ins. Co. v. Smith*, 487 S.W.3d at 861, we must conclude that the Court of Appeals erred in condoning an appeal by parties who claimed no such injury or grievance. We turn next to the Court of Appeals' willingness to accept substantial compliance with KRS 100.347(1).

## II.   Strict compliance with KRS 100.347(1) was required.

As a general rule, no appeal to the courts from an administrative agency exists as a matter of right. *Kentucky Unemp. Ins. Comm'n v. Normal Wilson & Universal, LLC*, 528 S.W.3d 336 (Ky. 2017). "The right to appeal the decision of an administrative agency to a court is a matter of legislative grace." *Nickell v. Diversicare Mgmt. Servs.*, 336 S.W.3d 454, 456 (Ky. 2011). Consequently, "the failure to follow the statutory guidelines for such an appeal is fatal." *Triad*

*Dev./Alta Glyne, Inc. v. Gellhaus,* 150 S.W.3d 43, 47 (Ky. 2004). For over forty years, Kentucky courts have required strict compliance with the provisions of KRS 100.347.

In 1978, this Court held that strict compliance with KRS 100.347 is necessary to perfect an appeal and invoke circuit court jurisdiction. In *Board of Adjustments v. Flood,* the Court was tasked with interpreting the requirements for appeals from a board of adjustment under KRS 100.347.[9] Certain parties filed an appeal from the final action of a board of adjustment but failed to include the planning commission, a necessary party pursuant to the 1978 version of the statute, as a party until sixty-eight days after the board's decision, well past the thirty-day requirement in the statute. 581 S.W.2d at 2. Finding this defect fatal, the circuit court dismissed the appeal, but the Court of Appeals concluded otherwise and reversed. *Id.* On appeal in *Flood,* this Court explained that strict compliance is required in a statutory appeal from an administrative agency decision, and if the statutory conditions are not met then a court lacks jurisdiction over the controversy. *Id.* As the Court colorfully opined, the statute's requirements were "as plain as a billboard." *Id.* Because the appellants did not include the planning commission as a party within thirty days, dismissal was proper. *Id.* Notably,

---

[9] While the version of KRS 100.347 effective today is not identical to the version of the statute as it existed at the time of the *Flood* decision, the provisions are substantially the same. The 1978 version states, in relevant part, "[a]ny person or entity claiming to be injured or aggrieved by any final action of the planning commission or Board of adjustments may appeal from the action to the circuit court of the county in which the land lies." Therefore, the only difference is that the 1978 version included appeals from a board of adjustment or planning commission in the same subsection, while the current version of KRS 100.347 places appeals from a board of adjustment in subsection (1) and a planning commission in subsection (2).

the appellants in *Flood* also attempted to frame the issue as one of indispensability of parties under CR 19.01, but this Court held that "[t]he civil rules do not apply in this type of litigation until after the appeal has been perfected." *Id.*

In statutory proceedings, the words of the statute are paramount. Here, as in *Flood,* the failure to comply with the requirements of KRS 100.347(1) is fatal. *Id.* A proper party has thirty days to perfect an appeal from a final action of a board of adjustment, and they must comply with all the requirements of the statute, including filing a claim that explains how the appealing party has been injured or aggrieved by the Board's action.

Recently, in *Isaacs v. Caldwell,* 530 S.W.3d 449, 451 (Ky. 2017), a developer sought to eliminate a proposed lake feature on a subdivision development plat. Several landowners, who had purchased their property in the subdivision relying on the economic and aesthetic value that would be added by the lake, opposed the amendment. *Id.* After the planning commission approved the amendment, the landowners initiated an appeal under KRS 100.347(2). *Id.* KRS 100.347(4) states that the owner of the subject property, in that case a bank, is a necessary party to any appeal. *Id.* The landowners' counsel encountered difficulty in serving a summons on the bank and failed to serve the bank within the applicable limitations period. *Id.* at 453. Ultimately, the developer sought dismissal of the action based on the landowners' failure to comply with KRS 100.347, and the circuit court dismissed the action as not commenced within the limitations period required by the statute. *Id.*

On appeal, the *Isaacs* Court discussed the general guidelines for judicial review of administrative agency actions:

> [W]e acknowledge the authority of the General Assembly to prescribe by statute the procedures for seeking and securing judicial review of an administrative ruling. Out of deference to that authority, we require strict compliance with the statutory procedures. "When the right of appeal from an administrative agency's ruling . . . is codified as a statutory procedure, as it is in KRS 100.347, then the parties are required to strictly follow those procedures." Based upon these principles, to obtain judicial review of the Planning Commission's approval of [the developer's] proposed plat amendment, Appellants had to strictly comply with all relevant statutory requirements for bringing its action in the circuit court.

*Isaacs*, 530 S.W.3d at 453–54 (quoting *Triad Dev.*, 150 S.W.3d at 47). Although the Court was addressing the timing requirements of KRS 100.347(2) (which governs appeals from a decision of a planning commission, while subsection (1) governs appeals, as here, from a board of adjustment), the Isaacs' decision, like *Flood*, 581 S.W.2d at 1, clearly indicates that strict compliance with KRS 100.347 is required in order for an action to proceed in the circuit court.

In KRS 100.347, the General Assembly specifically created a right to appeal from an administrative decision regarding planning and zoning but conferred that right only in those instances where persons or entities are injured or aggrieved by the administrative action. Just as it is within the legislature's purview to create the right to appeal from administrative decisions, it is also within their purview to prescribe the method of appeal – as pertinent here, requiring that a party be injured or aggrieved and plead such an injury. We must emphasize yet again, "an appeal from an administrative decision is a matter of legislative grace and not a right." *Triad Dev.,* 150 S.W.3d at 47.

12

When the grace to appeal a decision of a board of adjustment to a circuit court is granted by statute, strict compliance with the statute's terms is required. *Id.*

From a policy standpoint, we note that KRS 100.347(1) creates a narrow avenue to appeal the decision of a board of adjustment, and we conclude the legislature was intentional in creating that narrow avenue. By limiting the appeal process to certain injured or aggrieved persons or entities, the legislature has effectively prevented the filing of unnecessary and unfounded complaints by any citizen who simply disagrees with the board of adjustment's action. To perfect a KRS 100.347(1) appeal, a party or entity must assert that they have been injured or aggrieved by the board's action, thereby establishing their appeal is statutorily permissible.

The Court of Appeals instead suggested that substantial compliance is sufficient in a KRS 100.347(1) appeal, citing *Conley,* 456 S.W.3d 814. The *Conley* Court, relying on *Johnson v. Smith,* 885 S.W.2d 944, 950 (Ky. 1994) and *Lassiter v. American Express Travel Related Servs. Co.,* 308 S.W.3d 714, 718 (Ky. 2010), concluded that this Court allows substantial compliance in the appellate process, except for "tardy appeals and the naming of indispensable parties." *Id.* at 818. The Court of Appeals thus reasoned that because Meitzen and Nageleisen timely filed their notice of appeal and named all indispensable parties, nothing more was required. However, *Conley* involved a constitutional right to appeal from a lower court, not a statutorily-created right to appeal from an administrative body. Our Kentucky Rules of Civil Procedure controlled the entire proceedings in *Conley*, including a motion to alter, amend or vacate. Statutory appeals, such as the one before us, are different. They are literally "borne of" a controlling statute and they are premised on strict compliance with

13

that statute. The Court of Appeals erred in relying on the distinguishable *Conley* decision to hold otherwise.

In sum, Meitzen and Nageleisen were required to strictly comply with KRS 100.347(1) by claiming to be injured or aggrieved in some way by the Board's action approving the conditional use permit for The Growing Place. Their failure to adhere to the rather simple – "plain as a billboard" – requirements of the statute was fatal to their claim, thus justifying the circuit court's dismissal of the appeal. *Flood*, 581 S.W.2d at 2.

### III. Failure to comply with the requirements of KRS 100.347(1) creates an issue of jurisdiction, not standing.

In analyzing the requirements for a KRS 100.347 appeal, *Spencer County Preservation,* 214 S.W.3d 327, has guided practitioners and circuit courts since 2007. In that case, the Court of Appeals addressed an issue identical to the one before this Court. Property owners applied for a zoning map amendment to change the zoning of a 37-acre tract of land from agricultural to residential in order to develop a subdivision. *Id.* at 328. The application was approved, and Spencer County Preservation, Inc. (SCP) filed a complaint appealing the zoning amendment. *Id.* The circuit court determined that SCP lacked standing and granted summary judgment in favor of the appellees, holding that KRS 100.347(3)[10] was dispositive upon the issue of standing. *Id.*

---

[10] Although *Spencer County Preservation* interpreted the requirements of KRS 100.347(3), not subsection (1) which is controlling on this appeal, KRS 100.347(1), (2), and (3) each contain similar requirements for appeals, they simply govern appeals from different entities. Subsection (1) pertains to appeals from actions of boards of adjustment, subsection (2) pertains to appeals from actions by planning commissions, and subsection (3) pertains to appeals from actions of legislative bodies of cities, counties, and governments. Each subsection provides that "[a]ny person or entity claiming to be injured or aggrieved by any final action . . ." may appeal to a circuit court.

14

The *Spencer County Preservation* court determined that the true issue was one of statutory interpretation – "whether it is mandatory under KRS 100.347(3) for a party to allege in its complaint on appeal to the circuit court that the party has been injured or aggrieved by the final action of the legislative body . . . ." *Id.* at 329. The appellate panel noted its duty to "ascertain and give effect to the intent of the general assembly" and held that "a person or entity must claim in its complaint on appeal to be injured or aggrieved by a final action of a legislative body to pursue an appeal to the circuit court." *Id.* Because SCP failed to claim it had been injured or aggrieved and failed to offer any factual allegations in support of such a claim, the circuit court was required to dismiss the appeal for lack of jurisdiction. *Id.*

In Meitzen and Nageleisen's appeal, the Court of Appeals disagreed with the holding in *Spencer County Preservation*, finding that the decision interprets KRS 100.347 with "a hyper technical strict compliance view." Initially, we note that even if the statutory requirements are viewed as hyper technical, it is well within the legislature's power to enact such a statute. Additionally, the Court of Appeals disputed the *Spencer County Preservation* Court's framing of the issue as jurisdictional, finding no jurisdictional requirement in KRS 100.347(1) that parties must use the language "injured or aggrieved." In the view of the two judges in the majority, this language only expresses a prerequisite for standing. We disagree.[11]

---

[11] Although *Spencer County Preservation* interpreted section (3), a subsequent case, *Citizens for Preservation of Jessamine County, LLC v. Jessamine County*, 2010-CA-000722-MR, 2011 WL 1706760, at *5 (Ky. App. May 6, 2011), by Judge Combs, interpreted the same "claiming to be injured or aggrieved" language in section (2) of KRS 100.347 in exactly the same way, *i.e.*, as necessary to invoke jurisdiction not merely a reference to standing. At least one other appellate opinion has rejected the

15

Standing and jurisdiction are two distinct concepts, and the distinction is particularly important in this case. "'Standing,' of course, in its most basic sense, refers to an integral component of the 'justiciable cause' requirement underlying a trial court's jurisdiction. To invoke the court's jurisdiction, the plaintiff must allege an injury caused by the defendant of a sort the court is able to redress." *Lawson v. Office of Atty. Gen.*, 415 S.W.3d 59, 67 (Ky. 2013) (citing Ky. Const. § 112; *Rose v. Council for Better Educ.*, 790 S.W.2d 186 (Ky. 1989)). More specifically in this case,

> "Statutory standing" refers to whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action. Statutory standing is simply statutory interpretation: the question it asks is whether [the

notion that the "claiming to be injured or aggrieved" language is just a reference to standing and not necessary to invoke circuit court jurisdiction. *Eaves v. LRS Properties, LLC*, 2013-CA-000728-MR, 2014 WL 1882418 (Ky. App. May 9, 2014). Additionally, *Spencer County Preservation* has been cited numerous times for the general proposition that strict compliance with a statute granting an appeal from an administrative body is required.

For reasons unknown, the secondary source cited by the dissent fails to acknowledge *Spencer County Preservation* or its progeny anywhere in the treatise. However, the full quote from that source states: "To be 'injured or aggrieved,' which is what is required in order to have standing to appeal a planning commission, local legislative body, or court of adjustment 'final action,' a person probably must be something more than just a property owner or taxpayer in the municipality with only a citizen's interest in the efficient administration of zoning laws." 3A Ky. Prac. Real Estate Transactions § 31:8 (2019 Update). Once the word "probably" is removed, this is a correct statement of Kentucky law as far as it goes but, as repeatedly noted, KRS 100.347 requires an appealing party "**claiming** to be injured or aggrieved" and that "claim" part of the statute – an administrative appeal statute which we must strictly construe, *Flood*, 581 S.W.2d at 2, – must be complied with in order to invoke the circuit court's jurisdiction. A claim of personal injury or aggrievement is missing in this case.

Meitzen and Nageleisen complained about the nursery school being in a residential neighborhood; the number of daycare facilities and an elementary school in the area; the proximity to a dangerous curve; two testifying witnesses who would benefit from the building of the nursery school; and stated, "to place a daycare facility in this area would put the general public and our school children in immediate and present danger." This latter appears to be a general complaint, not a personally claimed injury or grievance regarding Meitzen's or Nageleisen's own children.

16

legislature] has accorded *this* injured plaintiff the right to sue the defendant to redress his injury.

*Lexington-Fayette Urban Cty. Human Rights Comm'n v. Hands on Originals*, 592 S.W.3d 291, 296 (Ky. 2019).

Jurisdiction, on the other hand, ". . . is the power of the court to decide an issue in controversy. The courts' power to inquire into facts, apply the law, make decisions, and declare judgment between parties is both constrained by and a function of their jurisdiction." *Nordike v. Nordike*, 231 S.W.3d 733, 737 (Ky. 2007) (citing *Black's Law Dictionary* 867 (8th ed. 2004)). "It is fundamental that a court must have jurisdiction before it has authority to decide a case. Jurisdiction is the ubiquitous procedural threshold through which all cases and controversies must pass prior to having their substance examined." *Wilson v. Russell,* 162 S.W.3d 911, 913 (Ky. 2005).

Meitzen and Nageleisen cite *Davis v. Richardson*, 507 S.W.2d 446 (Ky. 1974), to support their characterization of this issue as one of standing. In *Davis*, a property owner obtained a conditional use permit to operate a social club on his residential property. *Id.* at 447. An adjacent property owner who opposed issuance of the conditional use permit filed an appeal in circuit court and that court determined that the order granting the permit was invalid. *Id.* Davis appealed, and this Court's predecessor, then the Court of Appeals, held that property owners whose land is adjacent to and abuts property subject to a conditional use permit fall within the definition of injured or aggrieved parties and therefore have standing to seek judicial review of the permit. *Id.* at 448. In our view, *Davis* stops short of the larger issue before us.

17

Although Meitzen and Nageleisen are adjacent property owners to the property on which Swope and Glover seek to operate a commercial nursery, perfecting their right to appeal as granted by the General Assembly in KRS 100.347(1) creates a jurisdiction issue. While admittedly the statute has a standing component – that a party must be "injured or aggrieved" by the board's action – in order for a circuit court to exercise jurisdiction that party must *claim* their injury in the complaint. Mere ownership of adjoining property may place a party in the class of potential appellants but only when that party articulates his or her injury or grievance in the complaint have they complied with the statute. Addressing the timing requirement of KRS 100.347(2) as a jurisdictional issue, the *Flood* Court concluded "one of the conditions precedent to the exercise of judicial power by the circuit court was not met and [the circuit court] was required to dismiss the appeal for want of jurisdiction." 581 S.W.2d at 2. We hold similarly in the circumstances before us.

Simply put, in order to have statutory standing, Meitzen and Nageleisen must be "injured or aggrieved" by a final action of the Board, but in order for the circuit court to have jurisdiction, Meitzen and Nageleisen must also strictly comply with KRS 100.347(1). Because Meitzen and Nageleisen did not comply with one of the conditions precedent, *i.e.* claiming that they were injured or aggrieved by the Board's action, the circuit court was required to dismiss the action.

IV. **Meitzen and Nageleisen were not entitled to amend their complaint pursuant to CR 15.01.**

Finally, the circuit court denied Meitzen and Nageleisen's motion to amend their complaint pursuant to CR 15.01. That rule states that after a

18

responsive pleading is served, "a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." The Court of Appeals opined that in making a ruling on Meitzen and Nageleisen's motion, the circuit court should have considered whether the amendment could cure the complaint's deficiencies, prejudice the opposing party or work an injustice, citing *Kenney v. Hanger Prosthetics & Orthotics, Inc.,* 269 S.W.3d 866, 869 (Ky. App. 2007). According to the Court of Appeals, all these factors weigh in favor of allowing them to amend their complaint.

However, as repeatedly noted, the Civil Rules do not apply until *after* an appeal has been perfected, *Flood,* 581 S.W.2d at 2, rendering CR 15.01 inapplicable here. Indeed, resolution of the motion to amend returns us to the same principle: "the failure to follow the statutory guidelines for such an appeal is fatal. A person seeking review of administrative decisions must strictly follow the applicable procedures." *Triad Dev.,* 150 S.W.3d at 47 (citing *Taylor v. Duke,* 896 S.W.2d 618 (Ky. App. 1995)). Meitzen and Nageleisen failed to follow the appeal procedures in KRS 100.347(1) by not "claiming to be injured or aggrieved" in the complaint, and the circuit court dismissed the action. Without a properly perfected appeal, CR 15.01 did not apply, and the circuit court properly denied the motion to amend the complaint.

## CONCLUSION

To perfect their appeal, Meitzen and Nageleisen were required by the plain language of KRS 100.347(1) to claim that they were injured or aggrieved in some way by the final action of the Board approving the conditional use permit for The Growing Place. Their complaint failed to contain this necessary

19

allegation – a statutory requirement to invoke the jurisdiction of the circuit court – and, accordingly, the circuit court properly dismissed the action. We therefore reverse the Court of Appeals and remand this matter to the circuit court for reinstatement of its order dismissing the action.

Minton, C.J.; Nickell, and VanMeter, JJ., concur. Wright, J., dissents by separate opinion in which Keller, J., joins. Lambert, J., not sitting.

WRIGHT, J., DISSENTING: I respectfully dissent and would affirm the Court of Appeals.

Appellees, Meitzen and Nageleisen, sufficiently pleaded claims under KRS 100.347(1), which provides "[a]ny person or entity claiming to be *injured or aggrieved* by any final action of the board of adjustment shall appeal from the action to the Circuit Court . . . ." (Emphasis added.) This dissent is based on the fact that the appeal to circuit court was sufficient to meet the statutory requirements that Meitzen and Nageleisen were injured or aggrieved by the Kenton Board of Adjustments' actions; even if they failed to meet the statutory requirements, the trial court erred in failing to allow them to amend the complaint. Here, Meitzen and Nageleisen allege "*our* school children [are] in immediate and present danger." (Emphasis added.) If the Kenton Board of Adjustments' actions endanger Appellees' children, how could they be more injured or aggrieved?

As the majority points out, the requirement of a "claim" is satisfied when "assert[ing] in the face of possible contradiction." Here, Meitzen and Nageleisen allege in their complaint that "our school children [are] in immediate and present danger." This phrasing satisfies the definition of "claim" by being

20

placed in a legal complaint against an opposing party who would likely contradict; as such, the phrase amounts to a proper "claim" under the statute.

The majority opinion states "a party pursing an appeal from a board of adjustment must claim some type of hurt or damage, or some form of suffering or infringement that the party will experience as a result of the board's decision." Later the majority states "Meitzen and Nageleisen explain how they believe the Board erred legally but they fail to state how the alleged errors affect them or cause injury to them." I disagree because the complaint states that Meitzen's and Nageleisen's school children are in immediate and present danger.

Paragraph 21 of the complaint alleges the Board of Adjustment "failed to order a traffic and sightline study be conducted in light of the evidence presented that the proposed conditional use would cause an increase in traffic collisions, injuries and fatalities." Then they allege in paragraph 26 of the complaint "that to place a commercial nursery school on this particular parcel of land requiring the servicing up to 120 additional vehicles a day plus an additional 20 vehicles for employees plus yet additional vehicles for servicing the needs of a commercial nursery . . . ."

The complaint alleges in paragraph 31 "the Growing Place Nursery has absolutely no business being relocated on a very dangerous curve right next to, of all things, a very busy school intersection (Whites Tower Elementary)." Meitzen and Nageleisen complete their allegation of how they are injured or aggrieved by stating in paragraph 38 "to place a daycare facility in this area would put the general public and *our school children in immediate and present danger.*" (Emphasis added.)

21

Meitzen and Nageleisen clearly describe the danger and that *they* are injured or aggrieved because of the immediate and present danger to *their school children*. Meitzen and Nageleisen state in the complaint that the danger is to "our" children. Our is defined as "[t]hat or those belonging to us." Webster's II New Riverside University Dictionary (1984). Since the immediate and present danger alleged is to the school children of Meitzen and Nageleisen, they have alleged that they are injured or aggrieved.

The circuit court complaint in this case is distinguishable from that in *Spencer County Preservation*. The facts as related in the *Spencer County Preservation* opinion are sparse; however, it seems clear that very little was alleged in Spencer County Preservation's ("SCP") circuit court complaint. The Court of Appeals noted that "[i]n its complaint, SCP asserted that it was comprised of owners of property located near" the property at issue. *Id.* at 329. The court went on to state that SCP neither "claim[ed] that it had been injured or aggrieved by the final action of the Spencer Court Fiscal Court" nor "offer[ed] any factual allegation to support such a claim." *Id.* at 330. In making these observations about SCP's complaint, the court acknowledged SCP's two-fold argument. First, SCP argued "that merely filing the complaint is sufficient to perfect the appeal." *Id.* n.4. Second, it argued "that the planning commission heard evidence of how members of SCP were aggrieved by the rezoning." *Id.* By implication, therefore, it seems that SCP acknowledged that it did not allege in its complaint that it was injured or aggrieved, nor did it plead facts that would support such a claim.

Furthermore, even if Meitzen and Nageleisen failed to properly raise their claim, the trial court should have allowed them to amend their claim, as the

statute's "claim" requirements constitute a standing requirement rather than a jurisdictional one. As we have held, "[s]tanding requires that a party have a judicially recognizable interest in the subject matter of the suit." *Commonwealth v. Yamaha Motor Mfg. Corp.*, 237 S.W.3d 203, 205 (Ky. 2007) (internal quotation marks and citation omitted). In discussing "statutory standing," we have stated: "Standing in this sense has to do with whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action." *Lawson v. Office of Atty. Gen.*, 415 S.W.3d 59, 67 (Ky. 2013) (internal quotation marks and citation omitted). In *Lawson,* we made it clear that "[t]he question is whether the plaintiff is among the class of persons authorized by the statute to bring suit, and as such 'statutory standing' is not a jurisdictional question, but is essentially a matter of statutory construction."

Here, the majority cites *Spencer County Preservation, Inc. v. Beacon Hill, LLC*, 214 S.W.3d 327 (Ky. App. 2007), for the proposition that the statutory requirements regarding *who* may bring suit pursuant to the statute are jurisdictional. However, in *Spencer,* the Court of Appeals incorrectly expanded this Court's interpretation of KRS 100.347. I would overrule *Spencer* insofar as it holds that whether a party has pleaded that they are "injured or aggrieved" is a jurisdictional question. In reaching its holding that "the circuit court was required to dismiss the appeal for want of jurisdiction," the *Spencer* court cited one of this Court's cases, *Board of Adjustments v. Flood,* 581 S.W.2d 1 (Ky. 1978). However, upon closer examination, this Court did not rule that a party must assert that he is injured or aggrieved in order for a circuit court to have jurisdiction in *Flood*; rather, that case dealt with the requirement that the suit

23

be brought within thirty days—an issue which *is* jurisdictional as discussed below.

> Kentucky Revised Statute ("KRS") 100.347(1) states, in full, the following:

> Any person or entity claiming to be injured or aggrieved by any final action of the board of adjustment shall appeal from the action to the Circuit Court of the county in which the property, which is the subject of the action of the board of adjustment, lies. Such appeal shall be taken within thirty (30) days after the final action of the board. All final actions which have not been appealed within thirty (30) days shall not be subject to judicial review. The board of adjustment shall be a party in any such appeal filed in the Circuit Court.

The language "[a]ny person or entity claiming to be injured or aggrieved" is best understood as a standing requirement as opposed to a jurisdictional requirement. Only those requirements following the word "shall" are jurisdictional in nature: (1) The appeal shall be prosecuted in the county in which the subject property lies; (2) the appeal shall be taken within thirty days after the final action of the board; and (3) the board of adjustment shall be named as a party.

My interpretation of the statute is consistent with that of many practitioners. In fact, the Kentucky Practice Series on Real Estate Transactions informs its readers that "[t]o be 'injured or aggrieved,' . . . is what is required in order to have *standing* to appeal a planning commission, local legislative body, or court of adjustment 'final action.'" § 31:8 (emphasis added).

Because Meitzen and Nageleisen satisfied the jurisdictional requirements in their complaint, even assuming Meitzen and Nageleisen's complaint was insufficient when filed, the circuit court erred in denying their motion to amend their complaint under Kentucky Rule of Civil Procedure ("CR") 15.01.

24

The practical effect of the majority's opinion today is that it makes it virtually impossible for a party appealing under KRS 100.347 to ever correct a drafting mistake. Because the party could not amend his complaint, he would be required to dismiss his original complaint and file a new complaint. Practically speaking, it would be nearly impossible for a party to draft and file a complaint, become aware a mistake has been made, draft and file a motion to dismiss his complaint, have a judge grant his motion to dismiss his complaint, and then draft and file a new complaint within the thirty-day window allowed under KRS 100.347. The majority today gives a party only one bite at the apple and leaves no room for error.

Consequently, I would affirm the Court of Appeals. Appellees' pleading complies with KRS 100.347(1), as it alleges a proper claim of aggrievement to allow an appeal to the circuit court; even if it failed to do so, the trial court erred in denying Appellees' motion to amend.

Keller, J., joins.

COUNSEL FOR APPELLANTS:

Garry L. Edmondson
EDMONDSON & ASSOCIATES

Thomas R. Nienaber
SKEES, WILSON & NIENABER, PLLC

COUNSEL FOR APPELLEES
IAN MEITZEN AND DONALD L. NAGELEISEN:

Sherrill P. Hondorf
HONDORF LAW OFFICE

Donald L. Nageleisen

25

COUNSEL FOR APPELLEES
JESSICA SWOPE AND AIMEE GLOVER:

Thomas L. Rouse
THOMAS ROUSE LAW

COUNSEL FOR APPELLEE
VIRGINIA DUPONT:

Virginia Dupont