RENDERED: MAY 5, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0221-MR

CITY OF CORBIN, KENTUCKY;
CITY UTILITIES COMMISSION OF
CORBIN, KENTUCKY; AND MPI KY,
LLC                                                              APPELLANTS


                    APPEAL FROM LAUREL CIRCUIT COURT
v.                  HONORABLE GREGORY A. LAY, JUDGE
                    ACTION NO. 20-CI-00662


CITY OF LONDON, KENTUCKY                                            APPELLEE

AND


NO. 2022-CA-0334-MR

CITY OF LONDON, KENTUCKY                               CROSS-APPELLANT


          CROSS-APPEAL FROM LAUREL CIRCUIT COURT
v.                HONORABLE GREGORY A. LAY, JUDGE
                  ACTION NO. 20-CI-00662


CITY OF CORBIN, KENTUCKY;
CITY UTILITIES COMMISSION OF

CORBIN, KENTUCKY; AND MPI KY,
LLC                                                      CROSS-APPELLEES


OPINION
AFFIRMING IN PART,
VACATING IN PART,
AND REMANDING

\*\* \*\* \*\* \*\* \*\*

BEFORE:  THOMPSON, CHIEF JUDGE; COMBS AND JONES, JUDGES.

COMBS, JUDGE:  The City of Corbin, Kentucky, (Corbin); the City Utilities

Commission of Corbin, Kentucky, (the Utilities Commission); and MPI KY, LLC

(MPI), a private company, appeal from the summary judgment of the Laurel

Circuit Court entered in favor of the City of London, Kentucky, (London).  London

cross-appeals.  After carefully reviewing the record in light of the arguments of

counsel, we conclude that the existence of a genuine issue of material fact

precludes entry of summary judgment in London's favor and that London's cross-

appeal is without merit.  Consequently, we affirm in part and vacate in part, and we

remand for additional proceedings.

Pursuant to the provisions of KRS[1] 81A.420, London proposed to

annex two unincorporated areas in Laurel County.  Tract 1 encompasses a portion

of Interstate Highway 75 and its right-of-way for approximately nine miles.  It

---

[1] Kentucky Revised Statutes.

borders London's southern city limits. Tract 2, located at the intersection of Interstate Highway 75 and West Cumberland Gap Parkway, is adjacent to Tract 1 and is owned by G & M Oil Company. G & M Oil Company requested the annexation. Together, the tracts total 639 acres.

On August 12, 2020, Ordinance 2020-10 received its first reading. The ordinance defined the boundaries of the unincorporated territory proposed to be annexed and stated the intention of London to annex it. The ordinance directed that written notice of London's intention to annex the properties be mailed to the property owners of Tract 1 and Tract 2 as required by the provisions of KRS 81A.425.

On September 10, 2020, Corbin's counsel sent correspondence by email to London's City Attorney advising that Corbin owned utility infrastructure within Tract 1. Counsel noted that London had failed to provide notice of the proposed annexation to Corbin's mayor no later than fourteen (14) days prior to the meeting at which the ordinance would receive its second reading as required by the provisions of KRS 81A.427(3). Corbin lodged an informal objection to the annexation of Tract 1 and requested that London's city council postpone its meeting. However, London did not postpone the meeting, and on the evening of September 10, 2020, the ordinance received its second reading. Corbin's mayor appeared at the meeting to oppose the proposed annexation. The ordinance passed

-3-

unanimously. Thereafter, London provided public notice of the ordinance in September, October, and December 2020.

On September 11, 2020, the day after London's city council meeting, Corbin filed a petition for declaration of rights in Laurel Circuit Court. Corbin alleged that two controversies existed. First, Corbin challenged the legality of the ordinance proposing the annexation of Tract 1 and Tract 2 "on the basis that neither territory is suitable for annexation pursuant to the terms of KRS 81A.410." In part, it alleged that the annexation of Tract 1 constitutes prohibited "corridor annexation" and fails to serve a municipal purpose. It alleged that without annexation of Tract 1, Tract 2 is not contiguous or adjacent to London as required for its annexation. Second, it challenged London's failure to notify its mayor of the proposed annexation of Tract 1, "which houses utility infrastructure for water and sewer services, which is owned by Corbin, pursuant to KRS 81A.427." Citing the remedy provisions of KRS 81A.427(7), Corbin requested the court to declare the ordinance void.

On September 30, 2020, Corbin amended its petition to include MPI as a party-plaintiff and to add allegations concerning an additional controversy between the opposing parties. MPI owns property adjacent to Tract 1, and it also objected to London's decision to annex the area.

London answered and denied many of the substantive allegations of the petition.  However, it acknowledged that it did not provide written notice of the proposed annexation to Corbin's mayor.  It alleged that it was not required to do so under the circumstances and noted that Corbin's mayor unquestionably received actual notice of the ordinance as she appeared at the city council meeting.

London also challenged the jurisdiction of the court.  It argued that the court was not empowered by the provisions of KRS 81A.427(7) to declare its ordinance void because Corbin had not formally objected to the proposed annexation by timely forwarding a certified copy of a municipal order as required by the provisions of KRS 81A.427(5).  It also contended that no actual controversy existed between the party opponents; that Corbin and MPI had no rights or interests with respect to London's "*intent* to annex ordinance"; that both Corbin and MPI lacked standing; and that neither could show that either had been aggrieved, harmed, or damaged by the ordinance.

On November 6, 2020, the Utilities Commission filed a motion to intervene in the action and tendered an intervening complaint for declaration of rights.  Although Corbin owns the utility infrastructure, the Utilities Commission claimed that it acts as a trustee operating and managing the utility services.  It alleged that its interests were not adequately represented by Corbin.  London challenged the motion to intervene.  It noted that all rights of utilities providing

utility services in any area annexed by a city prior to the annexation are expressly preserved by the provisions of KRS 81A.490; therefore, no interests of the Utilities Commission were at stake.

The trial court granted the motion to intervene, and the Utilities Commission's tendered complaint was filed in the record. London filed its answer, and a period of intense discovery began. On January 6, 2021, London's city council adopted an ordinance finally annexing the disputed areas.

On March 8, 2021, Corbin, the Utilities Commission, and MPI filed a motion for summary judgment. London fled a cross-motion for summary judgment. Oral arguments were conducted before the trial court on July 22, 2021. By its order entered on February 9, 2022, the court granted London's motion for summary judgment. Without addressing the substantive contentions, the circuit court concluded that Corbin, the Utilities Commission, and MPI each lacked standing to maintain the action. Corbin, the Utilities Commission, and MPI filed this appeal; London filed a cross-appeal.

On appeal, Corbin contends that the trial court erred by concluding that it lacked standing as a matter of law. We agree.

Constitutional standing is prerequisite to establishing the existence of a justiciable cause. *Lincoln Trail Grain Growers Association, Inc. v. Meade Cnty. Fiscal Court*, 632 S.W.3d 766 (Ky. App. 2021). The "justiciable cause"

requirement in Kentucky Constitution, Section 112(5) is the basis of the trial court's jurisdiction. "To invoke the court's jurisdiction, the plaintiff must allege an injury caused by the defendant of a sort the court is able to redress." *Lawson v. Office of the Attorney General*, 415 S.W.3d 59, 67 (Ky. 2013).

So-called "statutory standing" is conferred where "a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action." *Id.* (citing *Small v. Federal National Mortgage Association*, 286 Va. 119, 747 S.E.2d 817 (2013) (quoting *CGM, LLC v. BellSouth Telecomm., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011))).

The first issue we address is whether the trial court erred by concluding that Corbin is not authorized by statute to pursue its litigation against London.

The provisions of KRS 81A.427(3) require a city proposing to annex an unincorporated area under the provisions of KRS 81A.420 to send notice of the proposed annexation "to the mayor of each city government owning utility infrastructure within the area proposed to be annexed." The timing and content of the notice are expressly prescribed by statute. KRS 81A.427(3)(a), (b), (c).

A city owning utility infrastructure as described which receives such a notice "shall have the right *to object and prevent the annexation* by sending a certified copy of a municipal order enacted pursuant to KRS 83A.060." KRS

-7-

81A.427(5) (emphasis added). The contents of the municipal order and the methods by which it can be delivered are carefully prescribed. *Id.* The certified copy of the municipal order "shall be received by the city acting [to annex property] at any time before or at the meeting where the ordinance is scheduled to receive its second reading." *Id.*

The provisions of KRS 81A.427(6) direct that a city *shall not annex any area that includes utility infrastructure owned by a city objecting under subsection (5) of the statute* unless the cities in interest agree through an interlocal agreement. If a city proposing to annex does not receive a municipal order from an affected city prior to or at the meeting, the annexing city may proceed to enact its ordinance. *Id.* In that event, "the city owning utility infrastructure shall forfeit its right to object and shall be deemed to have consented to the annexation." *Id.*

Where a city annexes property without following the express statutory requirements, the provisions of KRS 81A.427(7) provide a remedy: the affected city *may commence an action in circuit court* to void the final annexation ordinance. Relief is afforded where the circuit court "determines that the annexing city failed to substantially comply with the requirements of this section and the failure resulted in material prejudice to the substantial rights of the affected city." *Id.*

Corbin contends that the trial court erred by concluding that it did not establish statutory standing because it failed to prove that it owns the utility infrastructure within the area annexed by London. We agree.

The Kentucky Rules of Civil Procedure (CR) provide that summary judgment will be granted where the pleadings, depositions, answers to interrogatories, stipulations, admissions and/or affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56.03. Because summary judgment involves only questions of law and not the resolution of disputed facts, we may not defer to the trial court's decision. *Goldsmith v. Allied Building Components, Inc.*, 833 S.W.2d 378 (Ky. 1992). Instead, we must review the decision *de novo.* *Cumberland Valley Contrs., Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007).

Corbin asserts that its evidence confirms that it owns the utility infrastructure. In the alternative, it argues that the conflicting evidence of record creates a genuine dispute as to whether it owns utility infrastructure in the area annexed by London and that this factual dispute precludes summary judgment.

As the trial court observed, Corbin's claim of ownership is based, in part, upon: financial documents; minutes from city council meetings; and affidavits and emails authored by city officials, the Utility Commission

representatives, and others. London disputes Corbin's claim of ownership and argues that the evidence indicates that the utility infrastructure is owned by the Utility Commission instead. It relies, in part, on language included in: an easement; contracts; resolutions of the Utility Commission; and an audit filed with the Kentucky Department of Local Government.

Faced with conflicting evidence concerning ownership of the utility infrastructure, the trial court questioned whether Corbin and the Utility Commission are considered separate and distinct bodies. Examining relevant statutes, the court concluded that the Utility Commission and Corbin are indeed separate legal entities and "considering the totality of the circumstances, it therefore follows, that the utility infrastructure . . . is owned by the [Utility Commission]." Having determined that the Utility Commission, and not Corbin, owned the utility infrastructure, the court reasoned that the notice requirements of KRS 81A.427 were never triggered. Therefore, no statutory remedy was available, and Corbin could not establish statutory standing sufficient to maintain the action. We do not agree with the court's reasoning.

The Utility Commission is a special purpose governmental entity. KRS 65A.010. It has independent authority to generate public funds and may expend public funds, grants, awards, and appropriations from the city. *Id.* KRS 96.530 provides that it is "a public body politic and corporate, with perpetual

succession" and that it may "contract and be contracted with, sue and be sued, in and by its corporate name, and have and use a corporate seal." However, these qualities have little bearing on the issue of whether the Utility Commission owns the disputed utility infrastructure.

The determination of a party's standing requires consideration of the facts of each individual case. *Rose v. Council for Better Education, Inc.*, 790 S.W.2d 186, 202 (Ky. 1989). Here, the issue of ownership -- critical to establishing Corbin's standing to pursue this litigation -- remains in controversy. At this point, neither London nor Corbin has offered sufficient evidence to prove conclusively whether Corbin or the Utilities Commission owns the disputed infrastructure. This genuine issue of material fact is appropriately addressed to a fact finder for resolution; it simply cannot be determined as a matter of law at this time.

Nevertheless, London argues that it is entitled to judgment as a matter of law. Assuming that Corbin owns the disputed utility infrastructure and that the notice requirement of KRS 81A.427(3) was triggered, London contends that Corbin waived its statutory right to prevent the annexation by failing to provide London with a timely, certified copy of a municipal order as a means of objecting to the proposed annexation pursuant to the provisions of KRS 81A.427(5). Thus, London argues that the court could provide no redress.

However, Corbin **was not obligated** by language of the statute to provide a municipal order to preserve its right to object to the annexation where London did not **first** provide notice of the proposed annexation to Corbin's mayor as required by the provisions of KRS 81A.427(3). Consequently, Corbin did not waive its statutory right to try to prevent the annexation. London failed to establish that there are no genuine issues of material fact in dispute or that it is entitled to judgment as a matter of law. Thus, summary judgment was erroneously granted. We vacate on this issue and remand for additional proceedings.

Next, we consider whether the trial court erred by concluding that MPI lacked statutory standing. It is uncontroverted that MPI owns property directly adjoining Tract 1. Again, Tract 1 encompasses a portion of Interstate Highway 75 and its right-of-way for approximately nine miles.

Where a city annexes or proposes to annex territory in which no person is resident, an individual has standing to pursue a claim if he owns property directly adjoining a parcel of land that contains either in whole or in part any territory proposed to be annexed or annexed by the city. KRS 81A.482. For purposes of the statute, "parcel" is defined as "a tract of real property that is assessed as a single unit for purposes of determining ad valorem tax liability." *Id.* Because Tract 1 is a right-of-way, the parties agree that it is not subject to assessment for taxation.

While the trial court acknowledged that the legislative intent behind the statute was to broaden the basis for standing to challenge annexation proceedings, it concluded that the language of the statute is clear. It held that MPI does not own property directly adjoining a "a tract of real property that is assessed as a single unit for purposes of determining ad valorem tax liability."

Where provisions of a statute are plain and unambiguous, the language is to be given effect as written. *Kincaid v. Johnson, True & Guarnieri, LLP*, 538 S.W.3d 901 (Ky. App. 2017). It is true that the statute was enacted to provide standing to contest annexation to adjoining property owners. However, in light of its specific definition of "parcel," MPI is excluded from its application. MPI's ownership of property adjoining the right-of-way is not sufficient to establish its statutory standing. Consequently, the trial court did not err by granting summary judgment against MPI.

Next, we consider whether the trial court erred by concluding that the Utilities Commission lacked constitutional standing. To invoke the trial court's jurisdiction, a litigant "must have the requisite constitutional standing to do so, defined by three requirements: (1) injury, (2) causation, and (3) redressability." *Commonwealth Cabinet for Health and Family Services, Department for Medicaid Services v. Sexton by and through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185, 196 (Ky. 2018).

The trial court concluded that the Utilities Commission could not pursue its grievances against London's annexation because the provisions of KRS 81A.490 expressly preserve "all right of the utilities providing utility services in any area annexed by a city prior to the annexation." Where its rights are expressly preserved despite annexation, the court determined that the Utility Commission cannot show that it suffered a concrete or particularized injury. We agree.

The Utilities Commission cannot assert a direct injury caused by London's allegedly improper annexation of the territory described in its ordinance. Regardless of whether the annexation was proper, its interests are unaffected, and there is no redress to be had. Consequently, the trial court did not err by granting summary judgment against the Utilities Commission.

Finally, we address London's argument on cross-appeal. London contends that the appeal must be dismissed because Corbin, the Utilities Commission, and MPI failed to comply with the procedural requirements of KRS 100.347 governing zoning litigation. It explains that London's challenged ordinance was adopted pursuant to a procedure outlined in the provisions of KRS 100.209. Pursuant to this provision, when a city which has adopted zoning regulations proposes to annex unincorporated territory, it may amend its comprehensive plan and official zoning map to incorporate zoning regulations for the property proposed for annexation prior to adoption of the ordinance of

annexation. KRS 100.209. Where a city elects to follow this procedure, the planning commission holds a public hearing (after the adoption of the ordinance stating the city's intention to annex and prior to final action upon the ordinance of annexation) for the purpose of adopting a comprehensive plan amendment and making its recommendations as to the zoning regulations which will become effective for the property upon its annexation. *Id.* The city council takes final action upon the planning commission's recommendations prior to adoption of the ordinance of annexation.

London explains that the zone classification for the disputed tracts was assigned by its city council just before the annexation was approved at its December 30, 2020, meeting. It argues that the hybrid nature of the proceeding means that the annexation and zone classification are so intertwined as to be inseparable, and, as a consequence, Corbin, the Utilities Commission, and MPI are bound by the requirements of KRS 100.347 concerning appeals from a final action of its city council relating to a map amendment.

The provisions of KRS 100.347(3) require that an aggrieved party must appeal from the city council's final action within thirty (30) days after the final action of the legislative body. The statute provides that the legislative body and owners of the subject property "who initiated the proceeding shall be made parties" to the appeal to circuit court. KRS 100.347(3), (4). It provides that all

final actions which have not been appealed within thirty (30) days shall not be subject to judicial review. KRS 100.347(3). London argues that the failure of the appellants to name its city council and the owners of the disputed property in a timely appeal to the circuit court deprives the court of jurisdiction. We disagree.

Through this litigation, Corbin sought to challenge London's annexation of two unincorporated areas in Laurel County. It did not challenge the zoning of the tracts or any map amendment. KRS 81A.427(7) provides a specific remedy to a specific class of entities -- cities owning utility infrastructure within an area proposed to be annexed. The statute creates a specific, private right of action in these cities and a specific remedy. Because the basis of the trial court's jurisdiction is found in the provisions of KRS 81A.427, Corbin is not required to pursue its challenge to the annexation pursuant to the requirements of KRS 100.347 governing zoning litigation. The trial court did not err by refusing to grant summary judgment to London on this basis.

Based upon the foregoing, the judgment of the Laurel Circuit Court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS/CROSS-APPELLEES:

Patrick R. Hughes
Christopher B. Markus
Joseph M. Kramer
Covington, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT CITY OF LONDON KENTUCKY:

Larry G. Bryson
London, Kentucky

David A. Pike
F. Keith Brown
Shepherdsville, Kentucky